IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# WESTERN DIVISION.

JACKSON, APRIL TERM, 1893.

BOYD *v.* ROBINSON.

*(Jackson.* June 1, 1893.)

1. WILLS. *Construction of.*

A testator devised his real estate absolutely to two sons, providing, in the same clause, that if either should die intestate, and without children born in lawful wedlock, his share should go to the survivor, and, in the next succeeding clause, that if both sons should die without children, the whole estate should go to a daughter.

*Held:* The daughter takes only in the contingency that both sons die without children *and* intestate. (*Post, pp. 4, 5, 29–33.*)

2. SAME. *Same.*

A testator, having only one brother and one sister surviving, bequeathed his entire estate to the brother "and his lawful heirs," and in the event of the brother's death without "such heirs," then to the sister. Testator had no children, and his brother and sister would have been his heirs.

1—9 P

Boyd *v.* Robinson.

*Held:* The bequest to the sister is valid. The phrase "lawful heirs" means in this will "children." And hence it is neither a perpetuity, nor an estate tail which would by our statute be converted into an estate in fee. (*Post, pp. 5, 6, 33–40.*)

Code construed: §§ 2813, 2814, 2815 (M. & V.); §§ 2007, 2008, 2009 (T. & S.).

Cases cited and approved: Armstrong *v.* Douglass, 89 Tenn., 223; Franklin *v.* Franklin, 91 Tenn., 123; Cowan *v.* Wells, 5 Lea, 682; Petty *v.* Moore, 5 Sneed, 126; Bramlett *v.* Bates, 1 Sneed, 555.

Cited and distinguished: Middleton *v.* Smith, 1 Cold., 144; Kirk *v.* Ferguson, 6 Cold., 484, 485; Skillin *v.* Lloyd, 6 Cold., 563; Wynne *v.* Wynne, 9 Heis., 308; Grimes *v.* Orrand, 2 Heis., 298, 300; Read *v.* Fife, 8 Hum., 328; Polk *v.* Faris, 9 Yer., 234; Turley *v.* Massengill, 7 Lea, 356; Hooberry *v.* Harding, 3 Tenn. Ch., 677.

3. FAMILY SETTLEMENTS. *Sustained in Courts of Equity, when.*

Family settlements will be sustained in Courts of Equity, unless it clearly appears that there is manifest error, and, even in cases of persons under a disability, will not be disturbed after a long lapse of time, and the accrual of other rights thereon. (*Post, pp. 6, 11, 26, 27.*)

Cases cited and approved: Summers *v.* Wilson, 2 Cold., 469; Williams *v.* Sneed, 3 Cold., 533; Farnsworth *v.* Dinsmore, 2 Swan, 38; Owen *v.* Hancock, 1 Head, 563; Reynolds *v.* Brandon, 3 Heis., 593; Andrews *v.* Andrews, 7 Heis., 235; Darden *v.* Harrell, 10 Lea, 421.

4. RES ADJUDICATA. *Extent of.*

The plea of *res adjudicata* covers, except in special cases, not only the points upon which the Court was required by the parties to form an opinion and pronounce judgment, but every point which properly belongs to the subject of litigation, and which the parties, by the exercise of reasonable diligence, might have brought forward at the time. (*Post, pp. 19, 20, 27, 28.*)

Cases cited and approved: Nicholson *v.* Patterson, 6 Hum., 394; Thompson *v.* Blanchard, 2 Lea, 528; Parks *v.* Clift, 9 Lea, 524; 7 Wall., 623; 53 Am. Dec., 325.

5. SAME. *Same. Pleadings.*

Where lands have been sold for the ancestor's debts by judicial proceedings to which the heir was a party, the latter will be precluded from setting up title in himself, upon the ground that the ancestor held the lands under a deed that gave him only a life-estate, with remainder to the heir. In such case the construction of the deed is

necessarily involved, and; whether correctly or incorrectly done, becomes *res adjudicata.* (*Post, pp. 21–25.*)

Cases cited and approved: Shepherd *v.* Shepherd, 12 Heis., 280; Whiteley *v.* Davis, 1 Swan, 333; Bartee *v.* Tompkins, 4 Sneed, 638; Hoyal *v.* Bryson, 6 Heis., 141; Scott *v.* Fowlkes, 12 Heis., 700; Allum *v.* Stockbridge, 8 Bax., 358.

6. INFANT.    *Party to suit, when.*

An infant becomes party to a suit in such sense as to be bound by the result, where, in several consolidated cases, he is described in one of them as an unborn child and a necessary defendant, and is subsequently brought before the Court by process issued upon order of the Court, and in another of the consolidated cases he becomes a complainant by next friend. (*Post, pp. 21, 22, 27.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

MALONE & MALONE, and B. M. ESTES for Boyd.

MORGAN & McFARLAND, TURLEY & WRIGHT, METCALF & WALKER, and M. B. TREZEVANT for Robinson.

WILKES, J.    The main purpose of this first-named cause is to have the Court construe the wills of John B. and William H. Robinson, devising property valued at over $100,000.

The original bill was filed by Alston Boyd· and wife, Leila R. Boyd, Alston Boyd as administrator *de bonis non* of John B. Robinson, deceased, and

of William H. Robinson, deceased, and by Alston
Boyd as the next friend of his five minor chil·
dren, namely: Bessie, Mary, Alston, Jr., Leila, and
Martha Boyd, against Eula C. Robinson (now
Farnsworth) in her own right, and against Eula
C. Robinson (now Farnsworth) and L. B. McFar-
land, as executrix and executor of John B. Rob-
inson, Jr., deceased.

The bill was sworn to by Alston Boyd, on Oc-
tober 16, 1889, and, on the same day, a motion
was made for an injunction restraining the de-
fendant from removing or opening the iron safe
of W. H. Robinson, and removing therefrom all
of the valuable papers of W. H. Robinson and
John B. Robinson, Sr. Upon hearing the applica-
tion, on October 17, 1889, the Chancellor over-
ruled the motion for an injunction.

As no injunction was obtained, complainants
prepared an amendment to the original bill, and
the two, being attached, were together filed as
one bill, on January 15, 1890.

The complainants averred that John B. Robin-
son died in 1885, having first made his will, by
which he directed as follows:

"*Item Second.*—I give and bequeath all my es-
tate, real and personal, of every description and
wherever situated, absolutely, to my sons, William
Henry Robinson and John Beverly Robinson, Jr.,
to be equally divided between them. In case of
the death of either of my sons before my death,
leaving children born in lawful wedlock, then his

share to his child or children, as the case may be. But in the event of the death of either of my two sons before reaching his majority, or in the event of his dying intestate and without children born in lawful wedlock, then his share to his surviving brother.

"*Item Third.*—In case of the death of both of my said sons, neither leaving children born in lawful wedlock, then I give my whole estate to my daughter, Mrs. Leila Boyd, the personalty to her absolutely, the realty to her sole and separate use for life, with remainder over to her children."

The bill averred that testator's two sons, mentioned in this item of the will, had both survived the testator and then died, after attaining their respective majorities, without any children, and therefore complainants were entitled to the estate of John B. Robinson, Sr.; that William H. Robinson died two years after the death of his father, namely, in 1887, having first made his will, the second item of which is in these words: "I give all of my estate of every kind, real and personal, and wherever situated, to my brother, John B. Robinson, and his lawful heirs. If he dies without such heirs, then I give every thing to my sister Leila Boyd, the personalty to her absolutely and the realty to her for life, with remainder over to her children;" and that the said John B. Robinson, Jr., mentioned in this item of the will, had, two years after the death of his brother, namely, 1889, died without leaving any child him surviving,

no child ever having been born to him. Wherefore, Mrs. Boyd and her children claim that, under this section of the will of W. H. Robinson, they were entitled to all of the estate of which W. H. Robinson died seized and possessed.

The bill further avers that the said John B. Robinson, Jr., by his last will, devised every thing of which he was possessed to his wife, Eula C. Robinson (now Farnsworth), and that the said John B. Robinson, Jr., being in possession of the estates of his father, John B. Robinson, Sr., and his brother, W. H. Robinson, under their wills, the possession passed to the said Eula C. Robinson (now Farnsworth), who refused to give possession to the complainants to any part of the estates either of John B. Robinson, Sr., or W. H. Robinson, she insisting that the limitations over in the wills of these two testators in favor of Mrs. Boyd and her children were void, and that John B. Robinson, Jr., took a fee both in the estate of his father and his brother.

The bill avers that John B. Robinson, Sr., was a man of great prudence and skilled in business affairs, and that, having received by his wife (Mrs. Boyd's mother) soon after his marriage, some ten thousand dollars in cash, and, using this as a nucleus, he had from time to time invested and reinvested, and by his speculations and trades had accumulated a large estate, and that in the fifties he began taking title to this property, either in his name, as trustee for his wife and children, or

else had conveyances made to his wife for her life with remainder over to his children and their children, upon certain conditions and limitations, while other property, and notably the Planters' Insurance property and the property on Vance Street, was conveyed by John B. Robinson, Sr., directly and unconditionally to his children, in the year 1875.

In. 1873, Leila Boyd intermarried with Alston Boyd, by whom she had five children, all living at the date of the filing of the bill, and two of whom had been born prior to the year 1877.

In April, 1877, a family settlement was had with regard to the entire trust estate, the immediate cause of the settlement being an application of Mr. and Mrs. Alston Boyd to have set apart to Mrs. Boyd, ·in severalty, her one-fourth of the trust estate, there being, at that time, four children of John B. Robinson, Sr., namely: John Douglass Robinson, Leila R. Boyd, William H. Robinson, and John B. Robinson, Jr.

At this date, Douglass and Leila were over twenty-one years, W. H. ·was twenty and Jno. B., Jr., was thirteen years of age. Valuations were put upon all of the trust estate, and the indebtedness of the estate was then set out, amounting to something over $10,000. Mrs. Boyd was required to account for what she had theretofore received.

John B. Robinson, Sr., put in certain personal property disclosed by the bill, and insisted that as to a part of the property he had a life-estate, and

that as to all of the property he had a right to control it as one estate during his life. Considerable irritation arose out of the different views and contentions of the parties, but the result was a strictly family settlement, by the terms of which each child was to take one-fifth of the entire trust estate, and assume one-fifth of the debts of the estate, and John B. Robinson, Sr., was to take one-fifth of the entire trust estate, and assume one-fifth of the debts. In other words, instead of the estate being divided into four parts between the four children of John B. Robinson, Sr., John B. Robinson, Sr., was to get a child's part of the estate, and the estate was divided into five equal parts.

A bill was filed in the name of John B. Robinson, Sr., Alston Boyd, and his wife Leila, in order to ratify and confirm the family settlement, and to have set apart to Leila Boyd one-fifth of the estate, she having selected the house and lot on Front Street as her one-fifth of the entire estate, and agreed to pay her father $4,400 in order to equalize her share with the others, which she afterwards did. That while the agreement was, in fact, that Mrs. Boyd should receive only one-fifth, and while she only received this amount, yet the chancery proceedings were so conducted as to make it appear to the Court that she was in truth receiving one-fourth thereof.

Upon the death of Douglass Robinson, litigation sprung up between John B. Robinson, Sr., and his

Boyd *v.* Robinson.

two surviving sons on the one side, and Annie D. Robinson, the widow of Douglass, on the other, in which John B. Robinson, Sr., and his two sons, John B., Jr., and William H., filed a cross-bill, in which they set up the terms of the family settle- ment of 1877, and averred that, by and under that settlement, John B. Robinson, Sr., was possessed with a child's part of the estate, and averring that after the setting apart to Leila Boyd of the Front Street house, the entire trust estate was owned equally by the three children and their father, and the cross complainants prayed a partition of the estate in these proportions; that in this cause (to which Boyd and wife were not parties) the Chan- cellor decreed that there had been a family settle- ment in 1877, and that John B. Robinson, Sr., by the terms thereof, was to receive, and be vested with, a one-fifth interest therein; but the represent- atives of Douglass Robinson, having plead the statute of frauds, the plea was sustained, and after this such proceedings were had in the cause that the estate of Douglass Robinson was declared in- solvent, and all his part of the trust estate was set apart in severalty incumbered with his widow's dower, and the same was sold to pay debts ad- judged to be due from his estate, when it was bought in at chancery sale by W. H. Robinson, who paid for the same by using the claims of John B. Robinson, Sr., adjudged due him from the estate of Douglass, and nearly sufficient in amount to liquidate the entire purchase-money due from

him; that .W. H. Robinson probated the will, and qualified as executor of J. B. Robinson, Sr., deceased, but took no further steps whatever, so far as the records of the Probate Court disclose; that upon the death of W. H. Robinson, John B. Robinson, Jr., probated his will, and took out let-. ters testamentary, but never took any other steps in the administration of the estate, so far as the records of the Probate Court disclose; that soon after the death of John B. Robinson, Sr., namely, in 1886, the two brothers, William H. and John B., Jr., divided the entire trust estate standing in their names or in the name of their father, each one taking property supposed to be in the aggregate of equal value.

In this division no distinction whatever was taken with regard to any of the property owned by them, or the source from which it came, and there was thrown into the division thirteen acres of land owned by John B. Robinson, Sr., near the National Cemetery, and which had never belonged to the trust estate.

That the brothers remained in possession of the property received by each in the division of 1886, until the death of W. H. Robinson, and thereafter John B., Jr., continued in the possession of the entire estate to his death, after which time his widow succeeded him, and refused to allow Mrs. Boyd to enter and take possession of the estates of her father and brother, under the wills above named, claiming that the limitations over in her

favor were void, and that her husband took an absolute fee, which passed to her upon his death, under the terms of his will.

During the pendency of the present suit, namely, on November 12, 1891, the posthumous child and only heir at law of John Douglass Robinson, filed her bill against the complainants, E. C. Robinson (now Farnsworth) and Alston Boyd *et al.*, in which she insisted that, by the terms of the deed made by John B. Robinson, Sr., in 1859, in which he conveyed to his wife for life, with certain limitations over to her children, the property on Main Street, commonly called the "trunk store," J. D. Robinson had a mere life-estate, and that, upon his death, she took a fourth interest therein, as purchaser under the deed of 1859, and not as heir of her father; and that, by the terms of the same deed, upon the death of W. H. Robinson, she took a third of his interest in said lot; and, likewise, upon the death of John B. Robinson, Jr., she took a half-interest in said lot; and she prayed for a writ of possession, for an account of back rents, and for the establishment of her title, etc.

Answers were filed by all of the defendants, and the cause was regularly put at issue; but, in order that the whole subject-matter of the litigation might be settled in the present case, an amended and supplemental bill was filed herein, on January 11, 1892, setting up the filing of the bill in *Robinson* v. *Robinson*, making said Annie Douglass

Robinson a party to this bill, and insisting that, in case it should turn out that Annie Douglass was entitled to the interest she claimed, then that J. B. Robinson, Jr., and W. H. Robinson, in making the division, in 1886, were under a clear misapprehension as to their rights and title to this lot, which was very valuable, and praying that, in case said Annie Douglass Robinson recovered, then that complainants have compensation over against Eula C. Robinson for the loss occasioned by such recovery.

In the case of *Robinson* v. *Robinson*, said Annie Douglass also insisted that she took as purchaser, under another deed of Newton Ford and others to John B. Robinson, the lots situated at the corner of Main and Winchester Streets. But, as to this property, in the division of 1886, half thereof fell to John B., Jr., and half to W. H. Robinson, while, as to the "trunk store" lot, the whole thereof fell to W. H. Robinson.

The first amended bill also brought before the Court Dennison and wife, and relief was prayed against them upon the following facts stated briefly: That W. H. Robinson had purchased a claim owned by A. P. McNeal, administrator, etc., against J. P. Caruthers, which claim was a lien upon certain real estate near the city of Memphis; that one B. M. Stratton was jointly interested with said Robinson in the profits of the venture; that before the death of Robinson, McNeal and Stratton conveyed their interest in the claim to said W. H.

Robinson, who, at the time of his death, was pros-
ecuting a suit in the Chancery Court to subject
the real estate of Caruthers to the payment of his
claim; that after the death of W. H. Robinson, John
B., Jr., as his executor, prosecuted the chancery case,
had the land sold, and bought it in for $3,700,
paying for the same by crediting his bid with the
claim belonging to the estate of W. H. Robinson.
After this, John B., Jr., sold and, by his deed,
conveyed to Mrs. Dennison a part of the Caruth-
ers property, the consideration being $2,200, of
which $400 had been paid before the filing of
the bill, and the remainder, or $1,800, being still
due and unpaid. The bill insisted that, as to this
Caruthers property, it having been purchased by
John B. Robinson, Jr., with the claim of his
brother, in which he had only a limited interest,
that upon his death the title thereto vested abso-
lutely in complainants, and they prayed that it be
so declared, and, if this relief was not proper, then
for general relief.

The bill showed that W. H. Robinson had ac-
quired considerable property after the division be-
tween himself and his brother in 1886, and that he
had sold a part of this property to Patterson and
Cooney, receiving a part of the consideration in
cash, and the balance being on time; that John
B., Jr., as executor of W. H. Robinson, had col-
lected of Patterson and Cooney a considerable
amount due on their purchase, and that a consid-
erable amount still remained due and unpaid, as to

which the bill sought to recover the amount so paid by them to John B. Robinson, Jr., and as to the remainder it seeks judgment against Patterson and Cooney therefor.

The prayer of the bill was for a construction of the wills of John B. Robinson, Sr., and William H. Robinson, and that the limitations over in said wills to the complainants be declared good and valid, and that complainants be put into possession of the estates of said John B. Robinson, Jr., and William H. Robinson; that, under and by the family settlement of 1877, John B. Robinson, Sr., be declared to have had a child's interest in the entire trust estate, and that this be ascertained and complainants put in possession thereof; that the defendants be charged with all rents from the date of the death of John B. Robinson, Sr., for an accounting and general relief.

In the case of *Porter* v. *Boyd,* the Planter's Insurance property, under a bill by D. T. Porter against all of the persons claiming to be heirs or devisees of W. H. Robinson, was sold, said Porter and Robinson having been tenants in common of this property. At the sale Alston Boyd became the purchaser of the property at the sum of $51,-000, and the half thereof going to the representatives of W. H. Robinson is in Court, to be disposed of by decree in this cause.

The case of *Levy* v. *Robinson,* was a bill filed by Levy against E. C. Robinson (now Farnsworth), and Alston Boyd and wife, in which Levy averred

that he had rented the property on Main Street, commonly called the "trunk store," from John B. Robinson, Jr., for a term of years, at a rental of $300 per month; that Boyd and wife were claiming to be entitled to the rent, as also were Mrs. E. C. Robinson (now Farnsworth). Wherefore he filed his bill of interpleader in order that the Court might decide which was entitled to the same. Under a decree, in this cause, Levy paid into the Court his monthly rent, which had accumulated to the amount of about $5,000, after which the house burned down, and by the terms of the lease the rent ceased. This fund is now in this Court, to be disposed of by decree in this cause.

The case of *Malone* v. *Boyd* was a bill brought by Malone to sell a lot on Orleans Street which he and W. H. Robinson owned in equal moieties as tenants in common. The land was sold for partition, and the proceeds ($1,950) are now in the hands of the Clerk and Master of the Chancery Court, to be disposed of under a decree in this case.

The case was heard before his Honor, Chancellor W. D. Beard. The result was that the Chancellor ruled as follows:

1. That under the third item of John B. Robinson's will, Mrs. Boyd took a life-estate in all of his realty, with remainder in fee to her children; and, as to the personalty, Mrs. Boyd took an absolute estate, and that she was entitled to collect the rents from the realty from the death of her brother, John B. Robinson, Jr.

2. That under the second item of Wm. H. Robinson's will, Mrs. Boyd took an estate for life in his realty, with remainder in fee to her children, she taking his personalty absolutely, with the right to demand rents of the real estate from the death of her brother, John B. Robinson, Jr., Mrs. Boyd being adjudged entitled to all the rents of the property of Wm. H. Robinson, except as to the first piece mentioned, commonly called the "trunk store," as to which she was entitled to eight-ninths of the rents, and Annie Douglass Robinson to the remaining one-ninth.

3. As to the rents which had accumulated in Court from this "trunk store" property, in the case of *Levy* v. *Robinson*, the same was ordered transferred to the credit of this cause, there to be disposed of under the principles of the decree herein—namely, Mrs. Boyd to take eight-ninths and Annie Douglass Robinson one-ninth of the rents.

4. As to the fund in Court arising from the sale of the Planters' Insurance building, sold in the case of *Porter* v. *Boyd*, it was decreed to be treated as real estate, Mrs. Boyd to have a life-estate therein, remainder to her children.

5. That the fund arising from the sale of the Orleans Street property, in the partition suit of *Malone* v. *Boyd*, was to be treated as real estate, and disposed of as the fund in *Porter* v. *Boyd*.

6. The bill was dismissed as to Dennison and wife, the Court holding that John B. Robinson,

Jr., having a life-interest in the claim against the Caruthers property, could dispose of that claim in any manner he saw proper, and that there was, no resulting trust in favor of the remainder-men, such as would entitle them to follow the land itself, and oust Dennison and wife therefrom.

7. In pursuance to the ruling made next above (No. 6), the Chancellor declared that there was no resulting trust against Mrs. Farnsworth as to the 3.83 acres Caruthers land, but further held that the estate of John B. Robinson, Jr., was chargeable with whatever might be the interest of Wm. H. Robinson in the claim purchased from the Bills' estate against this Caruthers property, to the extent it was used by John B. Robinson, Jr., in the purchase of the Caruthers place.

8. In so far as the bill sought to recover the one-fifth interest, or child's share, which it was claimed John B. Robinson, Sr., had in the trust estate under the family settlement of 1877, or in so far as alternative relief was sought, to the effect that in case the family settlement was not enforced, then that compensation be made for the repudiation of the same, the bill was dismissed.

9. It was adjudged that, inasmuch as Annie Douglass Robinson, in the case of *Robinson* v. *Robinson*, should recover a one ninth interest in what is known as the " trunk store," it would result in a loss to Mrs. Boyd to that extent, the Chancellor decreed that, under all the circumstances of the case, it would be equitable to make this loss fall

equally upon Mrs. Boyd and upon Mrs. Farns-
worth—that is, that Mrs. Boyd should recover of
Mrs. Farnsworth one-half of the value of the one-
ninth interest so recovered by Annie Douglass Rob-
inson.

10. Upon the same equitable principles, inasmuch
as Mrs. Farnsworth would lose the thirteen acres
of land which formerly belonged to John B. Rob-
inson, Sr., the Chancellor ordered that one half of
this loss should be charged to Mrs. Boyd.

11. The Court ordered a reference to the Clerk
and Master to take proof and report: (1) What
the personal estate of John B. Robinson, Sr., con-
sisted of. (2) Of what did the personal estate of
William H. Robinson consist. (3) What rents Mrs.
Farnsworth had collected from the real estate be-
longing to the estates of John B. Robinson, Jr.,
and William H. Robinson. (4) What debts of
William H. Robinson were paid by the executor,
John B. Robinson, Jr. (5) He was directed to re-
port on all other matters of charge and discharge
equitably existing between the parties.

On August 17, 1892, Mrs. Eula C. Robinson
(now Farnsworth), individually and as executrix of
John B. Robinson, Jr., and L. B. McFarland, exec-
utor, prayed a broad appeal from the foregoing de-
cree. Annie Douglass Robinson also appealed. The
Boyds did not pray an appeal, but sued out a
writ of error, and assign as error to the action of
his Honor, the following:

1. In dismissing the bill as to Dennison and wife.

2. In declaring that there was no resulting trust in favor of Mrs. Boyd and her children in and to the 3.83 acres. of Caruthers land.

3. In dismissing the bill as to the one-fifth interest of John B. Robinson, Sr., in all the property involved in the case, as shown in the decree.

4. In adjudging and decreeing that the limitations of the deed of November 1, 1859, from John B. Robinson to Elizabeth B. Robinson were valid, and that, under the deed, Annie D., the child of John Douglass Robinson took or was entitled to receive one-ninth of the lot on Main Street, in Memphis, known as the "trunk store" lot, or any interest in or share of it whatever; and in adjudging and decreeing that the complainant, Leila Boyd, and her children were not the true owners of and entitled to this entire property.

5. In adjudging and decreeing that Eula C. Robinson was entitled to recover of complainant, or to be compensated for the one-half of the value of the thirteen acres of land that formerly belonged to John B. Robinson, Sr.

6. In adjudging and decreeing that Annie D. Robinson was entitled to recover any share of or interest in the "trunk store" lot.

The holding of the Court as to the two deeds, the one to the Winchester lot and the other to the Main Street lot, was assigned as error for Mr. Robinson. The Court held that these two deeds had been construed in the two cases of Annie D. Robinson against John B. Robinson, Sr., *et al.*, and

John B. Robinson, Sr., administrator, against Annie D. Robinson et al., referred to above; that, under this construction, it was held that the interest of John D. Robinson in said two pieces of property was a fee-simple, absolute interest; that, inasmuch as Annie D. Robinson, the daughter of John D. Robinson, was a regular party to said two cases, such construction was res adjudicata as to her. The Court further held, however, that this adjudication did not extend to or include the interest represented by W. H. Robinson in the Main Street lot, and as this interest had fallen in after the decrees in said two cases, said decrees were not res adjudicata as to such interest. As to this interest, the Court held that, under the deed, the Main Street property, W. H. Robinson having died without children, his one-third thereof, passed, by the terms of said deed, to Annie D. Robinson, Mrs. Boyd, and John B. Robinson, Jr. Under this ruling, a one-ninth interest in said Main Street lot was decreed to the said Annie D. Robinson.

The action of the Chancellor in decreeing this one-ninth interest to Annie D. Robinson in the Main Street lot was assigned as error.

The Court further construed the wills of John B. Robinson, Sr., and W. H. Robinson. Under this construction, it was held that the real and personal property of both John B. Robinson, Sr., and W. H. Robinson, on the death of John B. Robinson, Jr., passed to Mrs. Boyd and her chil-

dren, the personalty to Mrs. Boyd absolutely, and the realty to her for life, with remainder to her children. This is assigned as error.

Various assignments of error were made on behalf of Annie Douglass Robinson, all of which have been duly considered in the cause of *Annie D. Robinson et al.* v. *Eula C. Robinson et al.*, heard herewith. It is claimed the Court erred as follows:

1. In that it adjudged that complainant was, in legal effect, a party to the cause of *John B. Robinson* v. *Annie D. Robinson et al.*, No. 3210, R. D., of said Court, and was party thereto in such a capacity, and under such state of pleadings therein that her interest in the properties involved in this cause and controversy are concluded by the proceedings and decrees in said cause.

It is insisted that complainant was not, in legal effect, a party to said cause at all, the bill having been filed before her birth, and she having been made a defendant thereto by a mere order of Court, without any supplemental or additional pleadings, reciting the fact of her birth, and ordering summons to issue requiring her to appear on or before a named rule-day. The said order was void, and complainant was never legally made a party to said cause.

2. If complainant was ever legally made a party defendant to said cause, she was made such defendant only as the heir at law of John Douglass Robinson, her deceased father, and not in her ca-

pacity as claimant of an independent interest in the property, as purchaser under the deeds, Exhibits A and B, to the original bill herein.

3. The said cause, No. 3210, being a bill filed to administer the estate of John Douglass Robinson as insolvent, could not be used for the purpose of settling questions of conflicting title to the estate belonging, or supposed to belong, to the intestate.

4. Whether it be true or not that an insolvent bill in chancery could be used for the purpose of settling conflicting and hostile claims of title, it was not, in said cause No. 3210, undertaken to be used for that purpose within the proper meaning of the pleadings, proceedings, and decrees in that cause, the Court intending only by the proceedings and decrees therein to sell the property there involved *on the assumption* that they belonged in fee-simple absolute to John Douglass Robinson, but without an adjudication to that effect as against this complainant's interest as purchaser under said deeds, the record not showing any such adjudication against this petitioner, but, on the contrary, that the intent was to sell the interest of the intestate's heir therein as heir, without undertaking to determine, as against this complainant's claim as purchaser, what that interest was.

Said record fails to show any pleadings, issue, or adjudication as to the claims of this complainant as purchaser under said deeds.

5. The proceedings and decrees in said cause

cannot be determined to be conclusive of complainant's interest as purchaser under said deeds, Exhibits A and B, by argument, inference, or construction from the points that were actually adjudicated in said cause.

6. This complainant having prosecuted a broad appeal in said cause No. 3210, the decrees rendered therein were thereby vacated. The effect of the record, therefore, upon the interests of this complainant under said deeds, Exhibits A and B, must be determined by a consideration and determination of the true intent, meaning, and legal effect of the decree rendered by the Supreme Court of the State in said cause. That decree was a consent decree, based upon a contract of compromise.

The evidence herein shows that said contract of compromise was not intended to affect the interests of complainant in the properties involved in said cause No. 3210, except in her capacity as heir at law of her deceased father, John Douglass Robinson. The said contract of compromise, construed in the light of the contents of said record No. 3210, R. D., and of the record of *C. W. Metcalf, guardian,* v. *Annie D. Robinson,* No. 5700, R. D., of said Court, will not be construed as meaning more than a final cession and surrender of all of the matters involved in said litigation affecting this complainant (defendant herein) *as the heir at law* of her said father.

The said decree of this Court affirming the decrees of the Court below will be construed, and the

legal effect thereof determined, just as, and upon the same principles, that would govern in the consideration and determination of the construction and legal effect of the decrees of the Court below, if this Court should hold that its said decree, under any circumstances, should be given any more effect than was intended by the contract of compromise.

7. The Court below, in and by the decree therein entered, adjudged that the petitioner was entitled as purchaser, under said deeds, Exhibits A and B, to a four-ninths interest in said property on Main Street, near Monroe, and a one-third interest in said property at the corner of Main and Winchester Streets; that such interests, not coming to her by descent from her father, were not subject to sale for the payment of her father's debts; and that the decree for sale thereof, made in said cause No. 3210, was erroneous. The said error—if the record and proceedings in said cause No. 3210 be taken, as was done by the Court below, as an adjudication against the claim of petitioner as purchaser under said deeds—was error apparent; and, both because petitioner was then an infant and because said error was and is error apparent, the decrees in said cause No. 3210 should have been reviewed and corrected to conform to the rulings made by the Court below as to the original rights of petitioner in said property.

Petitioner should not have been precluded from relief on this aspect of the case by the fact that said decrees in No. 3210 were affirmed by this

Court, such affirmance having been made by consent, under the contract of compromise made by petitioner's guardian, and the same having been intended only *to consummate the cession and surrender of all petitioner's interest in said property, and the rents thereof as the heir at law of John Douglass Robinson*, upon the terms agreed upon by way of compromise. There has been no adjudication by the Supreme Court of the State upon the claims of petitioner as purchaser under said deeds, Exhibits A and B, and petitioner, in asking that the decrees in said cause No. 3210 be reviewed and corrected, does not ask to review and correct any ruling made by the Court of last resort.

8. The Court below should have decreed in favor of this complainant to the extent of a two-thirds interest in the property on Main Street, near Monroe, and of a one-third interest in the property at the corner of Main and Winchester Streets, under the last paragraph of the amended bill, the substance of which is that if the contract of compromise and the decree of the Supreme Court of the State entered thereon be held broad enough, in their general terms, to embrace and conclude the interests of this complainant as purchaser under said deeds, such contract and decree ought to be set aside and reformed to that extent, upon the ground that the said contract was made, and the said consent given by mistake on the part of the representatives of this complainant, and in ignorance of the material facts involved; and upon the further ground

(shown in said paragraph) that Wm. H. Robinson and his solicitor knew, or had reason to know or believe, that the representatives of this complainant did not, at the time of said compromise and consent decree, intend to embrace and conclude her interests as purchaser under said deeds.

9. The Court erred in holding that the limitation over of the interest vesting primarily in John B. Robinson, Jr., was void, because violating the rule against perpetuities.

A very able, exhaustive, and ingenious argument is made to sustain these assignments, and to protect the interest of Annie Douglass Robinson, which has been carefully considered, and to which due weight has been given, but which we cannot set out at length in this opinion. Without attempting to dispose of each of these matters *seriatim,* we only deem it necessary to pass upon the controlling features.

*First.*—The family settlement made in 1877, should be sustained in every respect, and all rights growing out of the same should be rigidly enforced.

Family settlements are always sustained in Courts of Equity, unless it clearly appear that there is manifest error; and, even in case of persons under disability, will not be disturbed after a long lapse of time, and the accrual of other rights thereon. *Summers et al.* v. *Wilson et al.,* 2 Cold., 469; *Williams et al.* v. *Sneed,* 3 Cold., 533; *Farnsworth* v. *Dinsmore,* 2 Swan, 38; *Owen and wife* v. *Hancock,* 1 Head, 563; *Reynolds* v. *Brandon,* 3 Heis., 593; *An-*

*drews* v. *Andrews,* 7 Heis., 235; *Darden* v. *Harrell,* 10 Lea, 421.

Annie Douglass Robinson is bound by the decrees made in the causes of *Annie D. Robinson* v. *Jno. B. Robinson et al.,* No. 3102, rule docket No. —, and *Jno. B. Robinson, Adm'r,* v. *Annie D. Robinson et al.,* No. 3210 rule docket, and *C. W. Metcalf* v. *Annie D. Robinson et al.,* No. 5700 rule docket.

She was properly before the Court in these causes. The pleadings in the first-named case referred to her as an unborn child and necessary party. In one case she was made complainant by next friend, and in the others she was served with process, and represented by guardian *ad litem.* In each case it was necessary to determine the interest of Jno. D. Robinson in the real estate, in order to determine in the one case the lands in which the widow was entitled to dower, and in the other to determine what lands were subject to be sold for the debts of Jno. D. Robinson. In both cases the Court must necessarily have passed upon the rights of the minor child, and in the last-named case the interest of the minor was the special matter under consideration.

The prayer for the construction of the two deeds was sufficient to give the Court authority to construe them; and whether it construed them according to the present contention is not now material.

The pleadings in the consolidated causes raise

the construction of said deeds, and were sufficient to prevent defendants from being surprised or misled in any way. *Shepherd* v. *Shepherd*, 12 Heis., 280; *Whiteley* v. *Davis*, 1 Swan, 333; *Bartee* v. *Tompkins*, 4 Sneed, 638; *Hoyal* v. *Bryson*, 6 Heis., 141; *Scott* v. *Fowlkes*, 12 Heis., 700; *Allum* v. *Stockbridge*, 8 Bax., 358.

Annie D. Robinson was a party to said proceedings, not only as heir, but also as child of John D. Robinson by apt designation, if that be material, which it is not necessary to determine. She was, however, described before the Court for all the purposes essential to determine her interest and dispose of the property in controversy.

Even if the Court's attention was not actually called to the particular points now made in argument on behalf of the minor, Annie D., still that would not prevent the decree rendered from being conclusive as to the parties in said consolidated causes.

The rule is that the pleading of *res adjudicata* applies, except in special cases, not only to the points upon which the Court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation, and which the parties, exercising a reasonable diligence, might have brought forward at the time. *Beloit* v. *Morgan*, 7 Wall., 623; *Nicholson* v. *Patterson*, 6 Hum., 394; *Thompson* v. *Blanchard*, 2 Lea, 528; *Parks* v. *Clift*, 9 Lea, 524; *Nolan* v. *Cameron*, 9 Lea, 234; *Embry* v.

*Connor*, 53 Am. Dec., 325; 5 Am. & Eng. Ency. of Law, 384, note 6; Freeman on Judgments, Secs. 253, 260, 266.

Besides, after decree in these consolidated causes, and pending appeal in the Supreme Court, on application of her regular guardian to the Chancery Court, she was permitted to compromise and receive a large consideration for, and in settlement of her interest involved. This was fairly done, and it. does not matter that the consideration, on a better view and investigation, was inadequate. There was no fraud, and she was bound by this settlement, and the decree of the Court below in the case of *Annie D. Robinson* v. *Eula. C. Robinson et als.* is in all things affirmed.

The Chancellor erred in the construction of the will of John B. Robinson, Sr. This will is as follows:

"*Item Second.*—I give and bequeath all my estate, real and personal, of every description, and wherever situated, absolutely, to my sons, William H. Robinson and John Beverly Robinson, Jr., to be equally divided between them. In case of the death of either of my sons before my death, leaving children born in lawful wedlock, then his share to his child or children, as the case may be. But in the event of the death of either of my two sons before reaching his majority, or in the event of his dying *intestate* and without children born in lawful wedlock, then his share to his surviving brother.

"*Item Third.*—In case of the death of both of my said sons, neither leaving children born in lawful wedlock, then I give my whole estate to my daughter, Mrs. Leila Boyd, the personalty to her absolutely and the realty to her sole and separate use for life, with remainder over to her children."

The second and third items must be construed together, and in the light of the whole will and the circumstances surrounding the parties at the time. When so considered, we are of opinion that the testator intended to divide his property equally between his two sons, and that each should take title in fee-simple; conditioned to be defeated upon the happening of two contingencies: First, dying without children; and, second, dying without making a will. If either son should die leaving children or leaving a will, his estate was at once freed from all conditions and limitations, and became absolute.

It was only in the event that both contingencies occurred, to wit, the dying without children and without a will, that the limitation over was to take effect. The brothers stood upon the same footing, and the right of either to dispose of his property by will was not abridged or affected in any way by the fact that he survived his brother. The limitation over to Mrs. Boyd was defeated as to the share of either when such one died leaving a will disposing of his property. Under the facts in this case, the devolution of the property of John B. Robinson, Sr., after the death of both his sons,.

depended not on the will of the father, but was removed from its operation by the happening of the contingencies therein provided for, to wit, the fact that each son left a will disposing of his property; and, under these wills of the sons, their legatees and devisees took their estates free from the limitations in the father's will.

The share of John B. Robinson, Jr., passed under his will to his widow. The share of W. H. Robinson passed under his will as hereinafter indicated. Under the construction placed on this will by the Chancellor, the son last dying without issue is deprived of the power of disposition by will. But we think no such distinction was intended. The power to will was given equally to each son. No reason can be assigned why the one last dying should be deprived of such power simply because he was survivor. It was evidently the intention of the testator to carry the property over to his daughter only in the event of both sons dying without issue and intestate.

The last clause provides that in case of the death of both sons, neither leaving children, then the estate is to go to Mrs. Boyd.

Now, if this clause is literally construed, it is utterly destructive of the prior provisions of the will. For instance, if William H. Robinson had willed his interest in the property absolutely, immediately upon his death, his devisee would have taken possession of the property, under his will, and the power of John B. Robinson, Jr., to will

his interest in the property would have been de-
stroyed unless children had been born to him and
survived him; and upon the death of John B. Rob-
inson without children, the title of the devisee un-
der · the will of W. H. Robinson would be in-
stantly defeated, and the whole estate would go to
Mrs. Boyd. Certainly, the testator never intended
any such result. Such construction would be a
radical revocation of an untrammeled power to dis-
pose by will, previously conferred, or, if it be said
that the first son dying might will away his inter-
est in the property, then we would have the anom-
aly of one son being given one-half the property
with full power to dispose of the same by will, and
the other being given one-half of the property
without power to dispose of it by will, or with
the power of disposition by will which would only
take effect upon his dying and leaving children
surviving him. The language of the will admits
of no such construction. Each son is put on the
same footing, and is given the same interest and
the same power of disposition.

All these difficulties will be obviated, and each
clause of the will reconciled by a different con-
struction, and the manifest intention of the testa-
tor carried out. The testator manifestly intended
that if either of his sons arrived at majority, then
he might dispose of his interest in the property
by will. But, if he died without making any
will, and without any children surviving him, then
his interest should go to Mrs. Boyd, and, of

course, if both died without making any will and without children surviving them, the whole estate would go to Mrs. Boyd.

It was contended that John B. Robinson, Sr., never intended that either of his sons should have the right to will any of his property to a stranger. That is to say, that neither son could make any will under which any portion of the property could be willed away from the blood of John B. Robinson, Sr. This proposition is clearly erroneous. For instance, suppose Wm. H. Robinson had married and died without children, and left a will devising all his interest in the property to his widow, and then John B. Robinson had died, leaving children surviving him; clearly, in such an event, Mrs. Boyd could take nothing under the will, because the contingency of both sons dying without children would not have occurred, and thus we have a case where part of the property by the will of one brother would have been carried to a stranger to the testator's blood.

We are of opinion that the shares of W. H. Robinson and John B. Robinson, Jr., in their father's estate passed, by the will of each, according to its terms and provisions, and was not any further controlled by the will of John B. Robinson, Sr.

We come next to consider whether, under the will of W. H. Robinson, his property—whether derived from his father or from his own labor—passed to John B. Robinson, Jr., absolutely, or

3—9 P

whether it vested in him a conditional fee, or whether the language employed created an estate tail, which, under the statute, would become an estate in fee.

The second item of his will says: "I give all my estate of every kind, real and personal, and wherever situate, to my brother, John B. Robinson, Jr., and his lawful heirs."

It will be conceded that if the will had stopped at this expression, then John B. Robinson, Jr., would have taken a fee-simple estate absolutely upon the death of W. H. Robinson.

But the item proceeds: "If he dies without such heirs, then I give every thing to my sister, Leila Boyd, the personalty to be hers absolutely, and the realty to belong to her for life, with remainder over to her children."

The word "such" refers to, and is correlated with the word "lawful," and the item is properly read, "If Jno. B. dies without *lawful heirs*," then the limitation is to take effect.

The important question is, Shall we give the words *lawful heirs* their strict legal, technical signification of heirs under the law, and next of kin, or shall we give it the meaning of children?

If the latter, the limitation to Mrs. Boyd would be legal, and take effect; if the former, then the limitation would be void, and must fail.

The case of *Middleton* v. *Smith*, 1 Cold., 144, was decided by Judge McKinney, 1860. The Court says a devise for a daughter and a bodily heir is

operative to invest the daughter with an estate in fee-simple, under Code, § 2813 (2007), and that § 2814 (2008) has no application to such a case. Under the common law, this would have been a conditional fee, and, under our statute, vests the fee in the first taker.

The same doctrine was announced in the case of *Kirk* v. *Ferguson*, 6 Cold., 484 and 485. The gift was to Rachael Means and to her heirs, the natural issue of her body forever. This was held to create an estate tail, and to come under the provision of the Code above referred to. In this case, there was a limitation over, but it did not take effect.

The same doctrine was held in the case of *Skillen* v. *Lloyd*, 6 Cold., 503. In this case, the will gave to Valentine Spring and the heirs of her body, for her sole and separate use during her natural life, certain real estate. The Court held that an estate tail was created, and the title vested absolutely in the devisee. It was sought to make a life-estate in the devisee, because of the words, "to her sole and separate use for life." Under § 2812 (2006) of the Code, the Court held that she took a fee, only restricting the marital rights of her husband.

In the case of *Wynne* v. *Wynne*, 9 Heis., 308, it was held, Judge McFarland delivering the opinion of the Court, upon the following words in a will: "For the natural love and affection I entertain for my son, Peter D. Wynne, I do, at my

death, lend to him and the lawful issues of his body, a tract of land," etc., that this was an estate in tail, and that Peter D. Wynne took an absolute fee. The Court said lawful issues of his body, and bodily heirs, at common law, would have created an estate tail, or conditional fee, and that it was converted into an absolute fee under the statute.

The limitation of an estate upon contingency of the first taker dying without issue or bodily heir or heirs, is bad, as being too remote an event to suspend a limitation. This is the view insisted on by Mrs. Farnsworth. On the other hand, it is insisted that the testator used the word "heirs" as synonymous with the word "children." That he used it in this sense is apparent, for he says "if he die without such heirs, then I give every thing to my sister," etc. It is also said the word "heirs" has been construed to mean "children" in the construction of a deed, as in *Grimes* v. *Orrand*, 2 Heis., 298, 300; *Read* v. *Fife*, 8 Hum., 328. But in each of these cases the deeds conveyed lands *in presenti* to the heirs of a living person, and the Court properly held that a person in life could have no heirs, and therefore the word "heirs" was not used in its technical or usual sense, when coupled with a present disposition, but must be construed as "children," so that we do not consider these cases as in point.

It is also insisted that in cases of wills in the main similar to this, the word "heirs" has been

construed to mean children, and not next of kin, as in *Petty* v. *Moore*, 5 Sneed, 126; *Cowan* v. *Wells*, 5 Lea, 682; *Franklin* v. *Franklin*, 91 Tenn., 123, 124; and the trend of our more recent decisions has been in this direction.

It is replied, however, and with much force, that while the rule is a technical one, which gives to the word "heirs" its technical legal sense, still it has grown into a rule of property as binding on the Court as would be a statutory enactment, and that the Court will not regard it as a mere matter of construction or intention; and it was so held in *Polk* v. *Faris*, 9 Yer., 234, and sustained as to the general principle of the force and effect to be given a rule of law in *Turley* v. *Massengill*, 7 Lea, 356; *Hooberry* v. *Harding*, 3 Tenn. Ch., 677, and other cases.

But in the more recent case of *Armstrong* v. *Douglass*, 5 Pick., 223, this Court said: "Through the zeal of the Courts to prevent perpetuities, the words dying, leaving no legal descendants, *and other like phrases*, were long ago given a uniform and technical meaning, whereby they were held to import an indefinite failure of issue, and limitations over depending on them were declared inoperative and void. But, finally, to avoid an equally hurtful extreme, it became the practice of the Courts to explore the whole will, and lay hold of some other expression or circumstance, if necessary, to defeat the arbitrary meaning of such words, and thereby give force and effect to the

manifestly lawful intention of the testator. Such is the rule of construction to-day, when the common law on this subject is enforced. *Bramlett* v. *Bates,* 1 Sneed, 555; 4 Kent's Com., 277, 279; 1 Jarman on Wills, 519, note 15."

Looking at this entire will and all the circumstances surrounding the testator, it appears that at the time W. H. Robinson made his will, his brother, John B. Robinson, and his sister, Mrs. Boyd, were his only surviving brothers and sisters and next of kin. He was attempting to provide for the contingency of his brother dying, leaving only his sister, Mrs. Boyd, surviving. He evidently contemplated that his sister, Mrs. Boyd, might survive his brother, John B.; and if we construe the word to mean children, then it is plain he intended Mrs. Boyd to take the property if his brother died without children. But, as Mrs. Boyd was his *heir*, we have him providing for her to take as his *sister* only in the event she was dead, as otherwise the brother would not die without heirs. In other words, if Mrs. Boyd were dead, so that she could not be *heir*, then she was to take under the designation of *sister*.

We think it very clear that W. H. Robinson, by his will, intended his property to go to his sister, Mrs. Boyd, in the event his brother, Jno. B. Robinson, died without children, and, under that will she takes all the property accumulated by W. H. Robinson in his life-time, and not disposed of by him, nor since used in paying his debts, as well

as his one-half the trust estate, and his one-half of the estate of his father, Jno. B. Robinson, Sr., if not disposed of by him in his life-time, or paid upon his debts, as was held by the Chancellor.

This holding is strictly in accord with the case of *Franklin* v. *Franklin*, 7 Pickle, 124, 134, in which the will of J. A. Franklin was construed, and which was almost identical in its terms and provisions with the will now under consideration. In that case J. A. Franklin, by his will, gave to his brother, Edward N. Franklin, his entire estate, etc. The will contained this further provision: "In case he dies without heirs, I want my sister, Mrs. Adele Van Bibber, to have it on the same conditions."

It was held that the word "heirs" used in the will manifestly meant children, Mrs. Van Bibber herself being an heir within the terms of the will, unless the word "heirs" there used was intended to mean children.

If the word "heirs" used in this will must be given its usual technical interpretation, we think it a proper case for the application of the rule laid down in the statute (Milliken & Vertrees' Code, § 2815), providing for the construction of limitations made to depend upon the dying without heirs, and there is nothing in the will of W. H. Robinson, when properly construed, which provides for a limitation, to take effect upon an indefinite failure of issue, but rather upon such failure at the death of W. H. Robinson.

The decree of the Chancellor is in all respects

affirmed, except so far as it construes the will of John B. Robinson, Sr., and, as to that will, must be modified as herein indicated, with the results growing out of the changed construction; and the cause will be remanded to the Court below, to be proceeded with in accordance with this decree.

The costs of the appeal in the case of *Annie D. Robinson* v. *Eula C. Robinson et als.*, No. 8115, will be paid by the complainants in that cause, the other costs as adjudged below. The costs of the appeal in the cause of *Boyd and wife* v. *Eula C. Robinson et als.* will be paid by the complainants, Boyd and wife, and the other costs in that cause will be adjudged in the Court below, but none of it will be adjudged against Annie D. Robinson.