DUFFY et al. v. JARVIS.

(Circuit Court, E. D. Tennessee, S. D. February 2, 1898.)

No. 587.

1. FEE-TAIL—RULE IN SHELLEY'S CASE—STATUTES.

The two statutes which have been generally enacted in the several states (as illustrated in Code Tenn. §§ 2007, 2008), respectively converting fees tail into fees simple, and abolishing the rule in Shelley's Case, are not inconsistent. The former applies where, by the terms of the instrument conferring the estate, it goes to the person mentioned, and the heirs of his body, while the latter applies where the terms of the instrument purport to create a life estate in the first taker, with remainder to his heirs, or to the heirs of his body.

2. SAME—CONSTRUCTION OF GRANT.

Inasmuch as it is the very terms of the instrument of which these statutes seize hold, in order to determine the consequence of the use of such terms, no room is left for any implication that a grant to A. and the heirs of his body creates a life estate, with remainder over to the heirs; for the terms thus used are the very ones which, by the statute relating to fees tail, confer a fee simple upon A.

This was a suit in equity by Daniel L. Duffy and others against Samuel M. Jarvis, trustee, to remove a cloud upon title. The defendant demurred to the bill.

Dodson & Dodson, for complainants.

Brown & Spurlock, for defendant.

SEVERENS, District Judge. The bill in this case was filed by certain heirs of Isadore M. Duffy to remove a cloud from their title created by the execution and recording of a certain trust deed by the above-named Isadore M. Duffy and her husband to Samuel M. Jarvis, trustee, as security for a loan of money, on the 13th day of August, 1873, on certain land, to which the complainants claim title. Mrs. Duffy at the time of the making of said trust deed was in possession under a claim of title derived through a deed from D. J. Duffy, her husband. The granting part of this last-mentioned deed was as follows:

"I hereby give, grant, bargain, sell, transfer, and convey unto the said Isadore M. Duffy and the heirs of her body, free from my control, or the control of any future husband, for their sole use, forever, the following described piece of land."

And the habendum was as follows:

"To have and to hold the above-granted premises to the said Isadore M. Duffy and the heirs of her body, free from my control, or the control of any future husband, for their sole and separate use and behoof, forever."

Mrs. Duffy died before the filing of this bill. Her heirs now claim title to the land in themselves, as of the remainder attendant on a life estate in their mother, upon the terms of the above-mentioned conveyance to the mother. The defendants, on the other hand, claim that the deed to Isadore M. Duffy and the heirs of her body vested in her a fee simple (there being heirs of her body), which she had the power and right to convey by the trust deed to Jarvis above mentioned. The whole case turns upon the construction to be given

to the deed to Isadore M. Duffy on the 13th of August, 1873. If that granted an estate in remainder to the complainants upon the termination of a life estate in Mrs. Duffy, the complainants are entitled to maintain this bill. If it did not, and the construction contended for by the defendants is the proper one, the suit of the complainants must fail. The issue presents an interesting question, which has its foundation in the ancient doctrines of the law respecting real property.

At an early period of the English law of real property, a gift or grant to a man and the heirs of his body constituted a conditional fee in the donee; that is, a fee conditional upon his having heirs of his body. If he did, then he was regarded as having an estate in fee simple, to such an extent that he could alien the lands and give a complete title. If he did not have such heirs, or if he did and they died in his lifetime, and no alienation had been made by the donee, the estate reverted upon his death to the donor. This power of alienation in case the donee of such an estate should have heirs of his body was the result of judicial theorizing prompted by the desire to promote a supposed public policy in the free alienation of lands; but in many instances it disappointed the expectations of the heirs, and defeated the intention of the donor. The landed nobility of the country, intent on holding their great estates in their own families, were dissatisfied with the result of this judicial construction of devises and grants, and procured the enactment of the statute (13 Edw. I.) de donis conditionalibus (that is, concerning conditional estates), which declared that thereafter such construction should not be given to the gift or grant, but that such conveyances should be construed (as their form is, and according to the intention of the donor) to convey an estate which would, upon the death of the donee, pass to the heirs of his body; and it deprived the donee of the power to alien the land upon his having heirs of his body, as he could previously have done. Under this statute, the donee had what was called an "estate tail" (that is, cut out of the fee); upon the termination of which the heirs of his body came into the estate according to the form of the gift. The estate tail which the first donee took was an estate tail general or special,—general when the gift over was to the heirs of his body, without other description; and special where it was to some special kind of such heirs, as heirs male or heirs female. This was the character of such estate as impressed by the statute de donis, and this law prevailed for several hundred years, until the effect of it, in tying up the lands of the country, became so intolerable that by another scheme of judicial devises the tenant in tail was allowed to cut off the entailment, and convert the estate into a fee simple, by having a proceeding instituted in a court by the intended purchaser, and then making concord with him,—a final agreement, sanctioned by the court, whereby the plaintiff took the land, or the tenant vouched in a pretended warrantor, then suffered a default, and the plaintiff took judgment against him, and he, in turn, against the vouchee, for lands of equal value; but, as the vouchee was always a good for nothing person, nothing was expected from the recovery over against him. But these methods of fines

and recoveries were formal contrivances, and in some of their features merely farcical. However, they served the purpose of providing a means of cutting off entails.

The rule of construction embodied in the statute de donis became inwrought as a rule of the common law of England, and in that form was brought by the colonists into this country. The practice of defeating its operation by fines or recoveries has not here prevailed to any extent, but quite generally the rule itself has been annulled by statutory enactment. If the statute of Tennessee had not annulled it, the rule of the statute de donis would have been precisely applicable to the deed under consideration. Under it, Isadore M. Duffy would have taken an estate in tail general, and her children, the heirs of her body, would have taken the inheritance upon the expiration of her life estate, and her conveyance of the property could not have defeated the heirs; but the statute of North Carolina of 1784, brought into Tennessee while yet a colony, adopted as a statute when the state was organized, and still retained as section 2007 of the Code, abolished the rule, and converted all estates in tail, general or special, into fees simple. This section of the Code reads as follows:

"Any person seized or possessed of an estate in general or special tail, whether by purchase or descent, shall be held and deemed to be seized and possessed of the same in fee simple, fully and absolutely, without any condition or limitation whatsoever, to him, his heirs and assigns forever; and shall have power and authority to sell or devise the same as he thinks proper; and such estate shall descend under the same rules as other estates in fee simple."

Of equal antiquity with this rule, whose history I have just traced, is, or was, a doctrine of the common law which has been called in England and this country the "Rule in Shelley's Case." The rule did not originate with that case, but is a still more ancient dogma. That, also, was a rule of construction, and it was this: Where one takes an estate by grant or devise, and the deed or gift by its terms gives him a life estate only, with remainder, immediately thereafter, or after the expiration of an intermediate estate, to his heirs, or the heirs of his body, then, if there should be such heirs, the tenant for life would become seised of an estate in fee simple, and those in remainder would take as heirs, and not as purchasers. The word "heirs," or "heirs of the body," in the deed, in defining who should take the remainder, were regarded as words of limitation of the estate, and not as words of purchase. And this rule was so stubborn that, if such were the words of the grant, it was therefrom conclusively inferred, as matter of law, that the intent and purpose of the grant was to create an estate of inheritance, which would descend to those nominated by the general description of "heirs," notwithstanding the grantor should declare his intention to be otherwise. But, to become subject to this rule, there must be, by the terms of the grant, a life estate in the first taker, with remainder to heirs, or the class of heirs, named in the deed. The result of this was that the first taker, immediately on the birth of heirs such as were mentioned in the grant, would take the remainder also, and thereupon have the whole estate. This he could alienate, and thereby disappoint the heirs, who would then be cut out of their estate in remainder.

The severity of this construction was modified somewhat in the interpretation of wills, where, if the other language made a different conclusion necessary in order to give effect to the evident intention of the testator, the rule was made to yield. The purpose of this rule is not certainly known, but it has remained as part of the common law of real property for centuries. And this rule, too, came to this country with the colonists, and has remained operative, except where annulled by statute, hoary and steadfast. At various dates, nearly all the states have, by legislative acts, abolished the rule in Shelley's Case. In Tennessee it continued to be a part of the law of real property until the act of 1852, whereby it was abolished. The following is the language of the act:

"Where a remainder shall be limited to the heirs or heirs of the body of a person to whom a life estate in the same premises shall be given the persons who, on the termination of the life estate, shall be heirs, or heirs of the body of such tenant, shall be entitled to take as purchasers by virtue of the remainder so limited to them." Laws 1851–52, p. 113.

This act was carried into the Code, and constitutes section 2008. These sections (2007, converting fees tail into fees simple, and 2008, abolishing the rule in Shelley's Case) are not, as supposed by counsel for complainants, inconsistent with each other. They both have reference to the form of the grant or devise, as the case may be. The first (2007) applies to the case where, by the terms of the instrument conferring the estate, it goes to the person mentioned, and the heirs of his body. The second (2008) applies to such instruments as by their terms purport to create a life estate in the first taker, and the remainder in the persons who answer the description of heirs, or heirs of the body, of such first taker. With this distinction in mind, the cases decided by the supreme court of Tennessee are readily reconciled. The error of counsel for complainants consists in supposing that by the language of this deed there is, by implication, a life estate, with remainder over to the heirs; but the difficulty is, there can be no implication where the law, seizing hold of the very terms of the grant, declares what shall be the consequence of the use of such terms. There is no room left for implication. This matter has been so many times before the supreme court of Tennessee, and counsel have so often fallen into misapprehension from failing to note that the distinction is one which pertains to the terms of the instrument conferring the estate, that it seems singular it should never have been remarked upon, though it is evident that it has at all times been manifest to the court. There is no inconsistency, as counsel seems to suppose, in the decisions of the supreme court of the state upon this subject. Thus, in Williams v. Williams, 3 Baxt. 55, the deed, in terms, granted an estate for life in the first taker, with remainder over to the heirs of the body. This, under the rule in Shelley's Case, would have constituted an estate in fee simple; but, that rule having been abolished by the act of 1852, the first taker was limited to a life estate, and the heirs of the body were entitled to the estate in remainder, and the court so held. On the other hand, there are a number of cases, arising since the act of 1852 was passed, in which, by the terms of the grant, the estate was con-

veyed to the grantee and the heirs of his body. In such cases the statute abolishing entails (Code, § 2007) has been steadily applied. Middleton v. Smith, 1 Cold. 144; Kirk v. Furgerson, 6 Cold. 479; Skillin v. Loyd, Id. 563; Wynne v. Wynne, 9 Heisk. 309; Boyd v. Robinson, 93 Tenn. 34, 23 S. W. 72; Brown v. Brown (Tenn. Ch. App.; Sept. 18, 1897) 43 S. W. 126. There are occasional instances where the court has referred to the relaxation of the stringent legal construction in the interpretation of wills, but it is not necessary to follow out that subject. The frequency of the cases which have arisen and have been controlled by section 2007 of the Code, is probably due to the use of old forms of conveyances, and it is likewise probable that in this way the real intention of the grantor has in many instances failed. But the law upon this subject is well settled, and the result is that the demurrer must be sustained.