HUTCHISON *et al. v.* BOARD.

HUTCHISON *et al. v.* BOARD *et al.*

(*Jackson,* April Term, 1952.)

Opinion filed June 7, 1952.

224

PAUL WHITE and HEATHCOCK & ELAM, all of Union City, and CECIL SIMS, of Nashville, for appellants.

WEAKLEY & WEAKLEY, of Dyersburg, for appellees.

Mr. Chief Justice Neil delivered the opinion of the Court.

The appeal in these consolidated causes involves the construction of two deeds duly executed by W. W. Hutchison to his son, R. A. Hutchison. The deeds are similar in all respects except as to the names of the defendants, who now claim title in fee to both tracts of land.

The provisions of said deed are as follows:

"for and in consideration of the sum of five dollars and the further consideration of love which I bear my son, R. A. Hutchison, I, W. W. Hutchison, have bargained and sold, and by these presents to transfer and convey unto the said R. A. Hutchison and to his lawful children born to him now and who shall hereafter be born unto him *after him,* two certain tracts, etc.'' (here follows a description of the two tracts.)

Immediately following the legal description and part of the premises of this deed appears the following language:

"It is my intention herewith to provide for my son, R. A. Hutchison, and his lawful children *after him.* These lands conveyed are subject to homestead and dower for the wife of my son, R. A. Hutchison, at his death and as long as she may remain the widow of R. A. Hutchison, but in the event said widow should marry again, then all homestead and dower shall cease and the same revert to the legal bodily heirs of R. A. Hutchison."

Thereafter follows the following language:

"To have and to hold the said tract or parcel of land, with the appurtenances, estate, title and interest thereto belonging, to the said R. A. Hutchison

and his lawful bodily heirs after him heirs and assigns, forever.''

''And I, W. W. Hutchison, do covenant with the said R. A. Hutchison and his bodily heirs after him that I am lawfully seized and possessed of said land in fee simple, have a good right to convey it, and the same is unincumbered.''

''And I, W. W. Hutchison, do further covenant and bind myself and my heirs and representatives to warrant and forever defend the title to said land to the said R. A. Hutchison and his lawful children after him heirs against the lawful claims of all persons whomsoever.''

The original bills in these causes were filed by the children of R. A. Hutchison, alleging that they are the bodily heirs and heirs at law of the said R. A. Hutchison deceased and are the joint owners of the lands in question; that the deeds from W. W. Hutchison to their father conveyed only a life estate to the latter with the remainder interest to them. The bills allege that the defendants are in possession of the lands and claim a fee simple title by and through a deed executed by R. A. Hutchison and wife to their predecessor in title who have conveyed to these defendants by deeds of record. It is alleged that said deeds are a cloud upon their title and that they have never made a conveyance of said lands. The prayer for relief is that a decree be entered removing the cloud upon the title and adjudging the complainants to be the owners of said lands in fee simple.

The defendants demurred upon the following grounds: (1) the deed which is made an exhibit to the bill shows on its face that a fee simple title was conveyed by W. W. Hutchison and not a life estate; (2) that the complainants

have no interest in the lands; (3) that defendants have been in adverse possession of said lands for more than 7 years under a registered assurance of title, purporting to convey an estate in fee; (4) that complainants are estopped by their silence to assert any claim against the defendants; (5) that they are not entitled to a receiver.

The Chancellor overruled each ground of the demurrer. A written opinion was filed with the record in which the Chancellor held that it was the intention of the grantor, W. W. Hutchison, as shown by the language of the deed to convey to his son, R. A. Hutchison, a life estate with remainder in fee simple to his children.

An appeal was prayed and granted to this Court. The assignments of error embrace the several grounds of the demurrer to which we have made special reference.

The principal question presented for consideration is whether or not R. A. Hutchison was given a life estate with remainder to his children or a fee simple with the children taking no interest whatever, or do they take as tenants in common?

In construing the deed, the pertinent parts of which are quoted in this opinion, we are concerned solely with the grantor's intention as gathered from the language of the deed and surrounding circumstances. His intention must be ascertained from the language of the entire instrument. In following this settled rule of construction the Chancellor made the following pertinent and correct observation:

"In search for the intention of the grantor no preference is given to the premises over the habendum because of position or form, and estate granted in the premises may be enlarged, qualified or diminished in the habendum clause.

" 'The paramount rule of construction to which all others are subservient is that the intention of the grantor is to be decided by consideration of the words he used. And as a corollary, to reach the intention it is proper to consider the entire instrument without regard to technical parts or divisions of the deed.' *Templeton* v. *Stong,* 182 Tenn. [591], 594, [188 S. W. (2d) 560], citing *N[ashville] C. & St. L. R.* v. *Bell,* 162 Tenn. 661 [39 S. W. (2d) 1026], *Lockett* v. *Thomas,* 179 Tenn. 240 [165 S. W. (2d) 375]; *McCord* v. *Ransom,* 185 Tenn. 677 [207 S. W. (2d) 581]; *Thompson* v. *Turner,* 186 Tenn. 241 [209 S. W. (2d) 25]; *Quarles* v. *Arthur* [33 Tenn. App. 291], 231 S. W. (2d) [589] 591.

"This principle of law of interpretation is well settled by a long array of authorities.

" 'If clauses or parts of a deed are conflicting or repugnant, the intention is gathered from the whole instrument, instead of from particular clauses and if it is the clear intent of the grantor that apparently inconsistent provisions shall all stand, it will be given that effect if possible, and the technical rules of the common law as to the division of deeds into formal parts will not prevail as against the manifest intent of the parties, as shown by the whole deed.' 16 Am. J., Sec. 235; *Quarles* v. *Arthur* [33 Tenn. App. 291], 231 S. W. (2d) [589], 591."

In construing the language of the deed the Chancellor expressed the opinion that it was written "by a person not versed in legal terms and not experienced in drafting legal instruments and this is a 'surrounding circumstance' that the court should consider." The appellants earnestly question this expression as being unsound. We

decline to make any elaborate response to this argument other than to say that there is much to sustain the view of the Chancellor. The draftsman of the deed in question was most certainly lacking in knowledge of any of the technical rules of conveyance. Nor can it be said that he understood the legal effect of the expressions used in preparing the deed.

 Under modern rules of construction of deeds the courts are not required to give a technical meaning to words unless the grantor clearly intended that such words were used in a technical sense. We think the clear intention of the testator to convey a life estate to R. A. Hutchison appears in the opening sentence in paragraph 2, quoted above, as follows: "It is my intention here to provide for my son, R. A. Hutchison, and his lawful children *after him.*" The last two words must be interpreted as meaning that the children are given a vested remainder interest; in other words a right of possession upon the death of R. A. Hutchison. But is is argued that the grantor considered the welfare of his grandchildren (complainants herein) believing the son would use the land for their benefit. The original bill, however, makes the charge that "R. A. Hutchison was a poor business man". The demurrer admits this to be true. It is not at all unreasonable that this allegation should be considered as another "surrounding circumstance" in ascertaining the grantor's intention. Moreover the argument is unsound except in cases where the parent is known to appreciate in the highest degree his parental obligations.

It is insisted by defendants' counsel that the conveyance to R. A. Hutchison "subject to homestead and dower for the wife of my son, R. A. Hutchison, at his death and so long as she remain the widow" etc. is evidence of an

intention to convey a fee because "there could be no homestead and dower in a life estate". But the complainants' reply is that it supports no such conclusion because "if the grantor had intended to *convey a fee* to his son he would have known that it was not necessary to say anything about homestead and dower for the widow as she would be entitled to it by operation of law, and it was impossible to deprive her of it."

The foregoing serves to illustrate the ingenuity of able counsel in supporting their respective contentions. We think the language clearly indicates that the draftsman had no knowledge of its actual legal effect. We are furthermore of opinion that it merely expressed the grantor's wish that his son's widow should have the beneficial enjoyment of the land so long as she remained unmarried.

In construing the words "after him" as conveying a life estate to R. A. Hutchison the Chancellor noted that these words "appear in the five principal paragraphs of the deed"; that in 2 C. J. 397, note 53, the words "after him" are held to mean "after his death" or "after his decease". See, also, 2 C. J. S., page 1008. Learned counsel for the defendants, appellants here, take the Chancellor to task, complaining that he erred in attempting to reconcile conflicting statements in the deed, "thus creating confusion and ambiguity". Following this criticism in a fair argument the counsel cite numerous cases wherein this Court has construed similar ambiguous language, particularly *Skillin* v. *Loyd,* 46 Tenn. 563 and insist that it is a precedent we should follow in the case at bar, also *Pryor* v. *Richardson,* 162 Tenn. 346, 37 S. W. (2d) 114, as well as other cases. We do not think the language used in the deed is at all ambiguous. It does not become so until we begin to think of certain words as having been

used in a technical sense. Comparing cases and distinguishing them as a means of finding the intention of the grantor in the case under consideration does not serve a useful purpose. Precedents in cases of this kind, as in causes involving the construction of wills, are not to be thought of as an infallible guide.

Contention is further made that if the word "children" as used in the deed is a word of purchase rather than of limitation then, wholly aside from any consideration of other language to be found in the deed, the legal effect of the grant to "the said R. A. Hutchison and his lawful children born to him now and who shall hereafter be born unto him *after him*", was to create a fee simple estate in R. A. Hutchison and his children then in existence *as tenants in common,* such estate opening up to let in after born children under Code Section 7598, citing cases *Beecher* v. *Hicks,* 75 Tenn. 207; *Livingston* v. *Livingston,* 84 Tenn. 448; *Blackburn* v. *Blackburn,* 109 Tenn. 674, 73 S. W. 109; and *Buntin* v. *Plummer,* 164 Tenn. 87, 46 S. W. (2d) 60.

But counsel manifestly overlook the fact that the word "children" might very reasonably be used as a word of purchase, grantees taking as vested remaindermen, rather than as tenants in common. After all it is a question of whether or not the grantor's intention to leave them nothing, R. A. Hutchison, their father, to take the fee, or both the grantee and his children should take the fee as tenants in common.

 It is our well considered opinion that the Chancellor was correct in his construction of the deed, i.e. that R. A. Hutchison was given an estate for life and the children a vested remainder interest.

In a supplemental brief, filed after the case was orally argued, it is insisted that in the absence of any language

limiting the estate of R. A. Hutchison to a life estate either in express terms or by necessary implication, then the deed must be construed as a conveyance of a fee simple to R. A. Hutchison and children as tenants in common. But we are not permitted to give any technical effect to the words used in the deed, such as "heirs", "heirs and assigns", "children" etc. The cases cited have no application since the words used in the deed now under consideration were not used in any technical sense. There is nothing in the instrument, or in "surrounding circumstances" to indicate that the words were so used. While there are no express words purporting to convey a life estate to R. A. Hutchison, we think the deed when stripped of all technicalities conveys such an estate by necessary implication.

Finally it is argued that the defendants have been in open and adverse possession under registered assurance of title for more than 7 years and hence have a valid fee simple title to the land, and that the Chancellor erred in holding to the contrary, citing and relying upon *Wallace* v. *McPherson,* 187 Tenn. 333, 339, 340, 214 S. W. (2d) 50, and *West* v. *Moore,* 193 Tenn. 431, 246 S. W. (2d) 74.

The first case is not applicable since the only question at issue was whether or not the 7 years statute of limitations could be invoked against one who claimed to be a tenant in common. Nor can the second case, *West* v. *Moore,* opinion by Tomlinson, Justice, be considered as in point, because there the life tenant's possession was not adverse to defendants *as remaindermen.* The latter in fact asserted no title as *remaindermen.*

▆ In addition to the cases cited in the opinion of the Chancellor, to wit, *Quarles* v. *Arthur,* 33 Tenn. App. 291, 231 S. W. (2d) 589 and *Teague* v. *Sowder,* 121 Tenn. 132,

114 S. W. 484, we think the overwhelming weight of authority sustains the complainants' insistence that the statute of limitations of 7 years adverse possession does not run against remaindermen during the life of the life tenant. In *Carver* v. *Maxwell*, 110 Tenn. 75, 71 S. W. 752, 753, it is said: "No rule of law is better settled in this state than that the statute of limitations does not run against remaindermen or reversioners during the continuance of the life estate." The question arose later on in *Teague* v. *Sowder*, supra, in which the Court quoted with approval the following excerpt from *M'Corry* v. *King's Heirs*, 22 Tenn. 267, 275, 29 Am. Dec. 165: "But a remainder-man or reversioner has no right or power to bring an action; he is not excused therefrom, for he cannot do it at all. His omission of it is no neglect; his postponement of it is no laches" etc. To the same effect see the numerous cases cited in Vol. 8, Encyc. Dig. of Tenn. Reports, pp. 440, 441.

The assignments of error are overruled, and the Chancellor's decree is affirmed.