W. H. BUTLER et al.

*v,*

WILLIAM RALPH PARKER et al.

(*Knoxville,* September Term, 1955.)

(May Session, 1956)

Opinion filed June 8, 1956.

Rehearing Denied September 3, 1956.

604

ELY & ELY, Knoxville, for appellant Butler.

IVAN T. PRIVETTE, Knoxville, guardian *ad litem*.

Francis W. Headman, Knoxville, for appellees William Ralph Parker and wife.

Mr. Justice Burnett delivered the opinion of the Court.

This is an ejectment suit which was tried below on a stipulation of facts. The title and immediate possession of a small farm located in Knox County, Tennessee is at issue.

On December 21, 1940, H. L. Parker and wife, M. V. Parker, conveyed the property in question to "Ralph Parker and at his death to his bodily heirs". The deed is one of the printed forms which was printed by a local printing company. The quoted portion above is written in in longhand by pen and ink. The various blanks are filled in down to the printed portion which says that the premises are "free from all incumbrances", then is written in in longhand "except the public road as laid off and parties of the first part are to retain full and complete control to farm, rent or lease the land during the natural life of both or either of them", and then follows the

usual provisions in the deed with various blanks thereafter filled in.

The grantors of this deed were the foster parents of the grantee William Ralph Parker. One of the grantors, the husband, died some two years after executing the deed and his wife died some twelve years thereafter. The parties apparently lived on the property during this time. In 1935, or shortly thereafter when the grantee of the deed married he built a small house on the property. Prior to that time and up until their deaths the old people lived in the old house. After Parker was married and built a new house he and his wife and different children whose ages range from 18 to 6, lived on this property. It is stipulated that the property is reasonably worth $3,500.

On May 20, 1950, the grantee Parker filed a voluntary petition in bankruptcy and his trustee sold the property at public auction. At this sale the appellants who were the complainants in the original bill purchased the property for some $250 subject to all "liens, taxes, and incumbrances, exemptions, claims, etc." The purchasers of this property, the complainants in the original bill and the appellants here, were creditors of Parker but received nothing on their claims through the bankruptcy.

The contention is made by the complainants that under the language of the deed (that part which is hereinabove copied) they acquired a fee simple title to said property by virtue of Section 64-102, T.C.A., which is the Code Section converting an estate tail into a fee simple title. The grantee Parker takes the position that he has a homestead interest in the property which could not and was not divested out of him in his bankruptcy proceeding. The Chancellor concluded that under the terms of

this deed the grantee Parker was vested with a life estate and that his children who are parties to this action had a contingent remainder. The Chancellor also concluded that the grantee, the bankrupt and father of these children, was not entitled to a homestead in the property. An appeal was seasonably perfected by the complainants. The grantee Parker has filed the record for writ of error. Able briefs have been filed and arguments have been heard by all parties including the guardian *ad litem.* We have done considerable reading and independent search on the matter and now have it for disposition.

The determinative and very interesting question is: What is the estate created by the deed when it is conveyed to "Ralph Parker and at his death to his bodily heirs"?

At common law a conveyance "to A and the heirs of his body" operated to vest a fee simple estate in A when issue was born. And then it was that A had the right to alienate and thus deprive the issue of any interest. This was true even though a result was reached which was obviously contrary to the grantor's intention to give A only a life estate and remainder to the heirs. A conveyance under these terms created a conditional fee estate which ripened into a fee simple estate upon the birth of issue capable of inheriting.

As a result, estates tail were created by the passage of the Statute *De Donis,* in 1285. As a result of this statute, effect was given to the conveyance as actually intended by the grantor; that is, where there was a conveyance "to A and the heirs of his body", it gave A the estate for life without the power to alienate the fee and the property vested in his lineal descendants to continue as life estates until B's line ceased to exist, and in the

case of the failure of issue, the property reverted to the heirs of the grantor. This statute resulted in very little sales or alienations of land. Naturally an intolerable situation developed and then it was that various ends were reached to defeat the statute *De Donis* so as to render estates tail alienable. In most modern statutes in the United States the estates tail have been made into fee simple estates. This is accomplished in Tennessee by the adoption of the statute Sec. 64-102 which is a codification of the Public Acts of 1784, Chapter 22, Sec. 5. This statutory enactment is in effect what is known as the New York Rule. Thus now an estate to "A and the heirs of his body" creates a fee simple estate. *Polk v. Faris,* 17 Tenn. 209, 210; *Middleton v. Smith,* 41 Tenn. 144; *Kirk v. Furgerson,* 46 Tenn. 479; *Skillin v. Loyd,* 46 Tenn. 563, 564; *Boyd v. Robinson,* 93 Tenn. 1, 23 S.W. 72; *Speight v. Askins,* 118 Tenn. 749, 102 S.W. 74; *Scruggs v. Mayberry,* 135 Tenn. 586, 188 S.W. 207; *Anderson v. Lucas,* 140 Tenn. 336, 204 S.W. 989; *Harwell v. Harwell,* 151 Tenn. 587, 271 S.W. 353.

The complainants, appellants here, rely upon the case of *Brown v. Brown,* decided by the Court of Chancery Appeals in 1897, 43 S.W. 126, as authority for their position. The case consists merely of one paragraph. The reasons why the court reached the conclusion that it did are not stated except to say that they disagree with the lower court and that a fee simple estate was created, citing therefor the statutes and several cases all of which are cited above as holding now that estates tail become fee simple estates.

The granting language in the Brown deed is: "unto Sallie Brown, and to her bodily heirs after her decease,—". In the case now before us it is to "Ralph

Parker and at his death to his bodily heirs". The similarity is readily seen. The Brown case is never cited in any of the footnotes to the Code so far as we can find where other cases supporting this proposition are cited. The only place that we can find it cited is in another opinion of the Court of Chancery Appeals on a point which is not here involved and in a Federal Court case. The holding in the Brown case seems to us to be based on a misconception of rules of construction with reference to the creation of estates in real property. None of the cases supporting this rule have followed the Brown case with the exception of the Federal Court case of *Duffy v. Jarvis,* C.C., 84 F. 731, which is an excellent discussion of the application of the rule in Shelley's case, but apparently the Brown case is there cited without it having been analyzed.

We think unquestionably if the deed now under consideration said "to Ralph Parker and the heirs of his body" that it would have created, under the statute last above referred to, a fee simple estate in Parker. The language used in the conveyance herein though is different. The language here used is equivalent to saying "to Ralph Parker for life and then to the heirs of his body". Under a deed with language of that import at common law it would have vested a conditional fee in the grantee and under the statute *De Donis* would have vested a fee tail estate in him by reason of the application of the rule in Shelley's case. This rule was abolished by Sec. 64-103, T.C.A., which is a codification of the Public Acts of 1851-52, Chapter 91, Sec. 1. It seems to us that as a result of the abolishing of the rule in Shelley's case, Code Section last above referred to, Sec. 64-103, T.C.A., the convey-

ance today would vest in the grantee a life estate with a contingent remainder in his heirs.

■ ■ The rule in Shelley's case is generally said to be where A by deed or other instrument takes an estate of freehold, either legal or equitable, and in the instrument there is a limitation by way of remainder, either with or without the interposition of an intervening estate of the same legal or equitable character, to his heirs or the heirs of his body, as a class of persons to take in succession, the limitation to the heirs entitles the ancestor or first taker to the whole estate. *Polk v. Faris,* 17 Tenn. 209, 30 Am. Dec. 400; *Cooper v. Coursey,* 42 Tenn. 416, and others. This statute, Sec. 64-103, T.C.A., abolishing the rule in Shelley's case provides:

> "Where a remainder is limited to the heirs or to the heirs of the body of a person, to whom a life estate in the same premises is given, the persons who, on the termination of the life estate, are heirs or heirs of body of such tenant, shall take as purchasers, by virtue of the remainder so limited to them."

Clearly under this statutory provision the heirs or heirs of the body of the grantee which before would have only enlarged the life estate of the parent into a fee has the result of limiting the interest of the grantee in the property devised to a life estate with a contingent remainder in fee to those who at the death of the life tenant will answer the description of the heirs of his body. *Campbell v. Lewisburg & N. R. Co.,* 160 Tenn. 477, 487, 26 S.W.2d 141. And a more recent case sustains this same position, that is the case of *Guy v. Culberson,* opinion of which was prepared by the late Mr. Justice Cook and is found in 164 Tenn. 509, 51 S.W.2d 500, 501. In that case the conveying clause was " 'to the said David

Guy his natural life and heirs forever.' " The Court held in this case that the statute abolishing the rule in Shelley's case was applicable because the estate was expressly limited to the grantee Guy for his life and that the rule doing away with estates tail under Sec. 64-102 was not the applicable rule.

It is impossible for us to make any distinction or legal difference between a conveyance *"to Ralph Parker for life and at his death to his bodily heirs"* and a conveyance "to Ralph Parker and at his death to his bodily heirs" as is in this deed.

■ We have read all the cases cited as authority for *Brown v. Brown, supra,* and it is our studied conclusion that none of these cases are authority for the conclusion therein reached because the granting language in each instrument whether deed or will is entirely different from the granting language in the deed of Brown. We feel that clearly under all those cases, under the language therein used the Court was correct in reaching the conclusion that an estate in fee was created. The language in none of those cases is the same or comparable with that in the instant case. At least the inclusion in the instant case of the phrase *"and at his death"* takes the case out of the rule laid down by the cases cited in *Brown v. Brown, supra,* and places the instant case squarely in line with the last two cases herein cited of *Campbell v. Lewisburg & N. R. Co.,* and *Guy v. Culberson, supra.* The case of *Campbell v. Lewisburg & N. R. Co.* is about the third time that the will involved in that case came on for consideration by this Court, it having been considered before in *Williams v. Williams,* 57 Tenn. 566; and Id., 62 Tenn. 55. We are satisfied that under the correct application of the interpretation of the phrase used

in this case that those cases are controlling and that under the statute all Parker got in the instant case was a life estate and that his children have a contingent remainder.

We come next to the claim of William Ralph Parker for homestead. In an annotation in 89 A.L.R. at page 523, it is said:

"With but few exceptions it has been held that a claim of homestead may not attach to either vested or contingent future estates or interests in land. For the reason that land held in remainder is not susceptible of that immediate occupancy which is contemplated by law in order to support a claim of homestead, a homestead may not be claimed therein by the remainderman; and the same rule applies where the remainderman occupies the premises during the life of the life tenant by the latter's permission."

Among other authorities from other jurisdictions are our cases of *Howell v. Jones,* 91 Tenn. 402, 19 S.W. 757; *Davis v. Brown,* Tenn. Ch. 62 S.W. 381.

The contention is made here on behalf of Parker that since his foster father was the owner of the land and died long before this property was sold in bankruptcy, and that his foster mother who was living at the time not having any interest in the property, that for this reason he was entitled to homestead. The deed from the foster mother to Parker reserved a life estate for both the foster father and the foster mother and any interest that Parker might have therein was subject to the life estate of each foster father and foster mother without regard to who owned the fee prior to this conveyance. Thus it is that no homestead is allowable in the property. The Chancellor is affirmed on this question.

·· Lastly we come to the assignment in reference to the fee allowed the guardian *ad litem* by the Chancellor and taxed as part of the costs of the cause against the complainants, appellants here.

It must be kept in mind that this suit was brought by the complainants, appellants here, for their benefit. They brought the suit against Parker and his wife and these minor children seeking to set up a fee simple title in the land. They are the ones who would and sought to benefit by this litigation in that they are definitely ascertaining the extent of their ownership. If they had been successful in this litigation to obtain a fee simple title, that is what they sought, then they would have gained their end and probably would not complain about the fee of the guardian *ad litem*.

In the first instance they complain that the fee allowed by the Chancellor for the services rendered by the guardian *ad litem* for these minor children in that Court was excessive. There is absolutely no proof one way or the other in this record as to what work was done by the guardian *ad litem* (other of course than what the record shows). This being true we must certainly presume that the fee allowed by the Chancellor was not in excess of what was earned by the guardian *ad litem*.

Of course the major complaint under this feature of the case is that the court should not tax this fee of the guardian *ad litem* up as part of the costs of the cause because it is argued that to do so constitutes an undue financial burden upon the complainants, appellants here. The record shows that these complainants purchased this property, or such interest as they might acquire, in 1950 for the small sum of $251. It is likewise shown in

the record by a stipulation that the property is worth $3,500.

The appellants rely on a statement made by this Court in 1875 in the case of *House v. Whitis,* 64 Tenn. 690, 692 wherein it was said:

"Where a lawyer takes his license he takes it burthened with these honorary obligations. He is a sworn minister of justice, and when commanded by the court can not withhold his services in cases prosecuted in *forma pauperis.*"

And the later case of *Patton v. Dixon,* 1900, 105 Tenn. 97, 58 S.W. 299, 301, is to the same effect. These holdings are the basis of a statement in Note 52 to Section 1182 of Gibson's Suits in Chancery, 4th Edition. Upon reading *Patton v. Dixon, supra,* it will be seen that the question there presented is exactly the same as here presented but the Court followed this ruling quoted from *House v. Whitis, supra,* "In the absence of statutory provision, this is the ordinary rule." Citing, 10 Cyclopedia of Pleading and Practice. The author of the opinion in *Patton v. Dixon, supra,* says that prior to the holding therein that Chancellor Cooper made his own rule and had taxed the guardian *ad litem's* fee as a part of the costs of the cause in certain cases which were named. It is also said that he had followed his own rulings in other cases and in cases from other jurisdictions wherein he had taxed guardian *ad litem* fees as part of the costs. From that time, that is, 1900 down to the present time the only reference to this feature of the case in the Shepard's Citations is a Court of Appeals case wherein an exception was made in a trust suit and the trust fund was charged and taxed for the guardian *ad litem's* fee as part of the costs.

We come on then to 1917 when the Legislature of this State in Chapter 107 of the Public Acts of 1917, passed what is now codified as Section 20-1621, T.C.A., wherein the trial judge is given the right, in his discretion in all civil cases, to apportion the costs between the litigants as he sees fit and as equity demands. There is a well written note in 30 A.L.R.2d and particularly at page 1154, where it is in effect said that under statutes similar to that last above referred to that:

"Taxation as costs of the fee of a guardian *ad litem* for minor defendants has frequently been made against the plaintiff or complainant. Where the action is at law and the plaintiff was the losing party, this is entirely logical. There are, however, not infrequent instances in which the taxation has been against a successful plaintiff. This result may be justified either on the theory that the trial court, especially if the proceeding is in equity, has discretion to tax the costs against the party he believes equitably liable for them, or the theory that since the suit could not have been maintained in the absence of an appointment of a guardian *ad litem,* the expenses of such an appointment were incurred for the benefit of the complainant, and the circumstances that the latter was successful in the litigation is immaterial."

When this Court had before it the case of *Runions v. Runions,* 186 Tenn. 25, 207 S.W.2d 1016, 1019, 1 A.L.R.2d 242, it was in view of this Code Section that this Court there taxed the guardian *ad litem's* fee for services therein rendered. This Court without specifically referring to this Code Section said:

"The question of adjudging costs is a matter within the reasonable discretion of the Court. This proceed-

ing was had for the benefit of these appellants. They should pay all costs in all Courts. The appointment of a guardian *ad litem* to represent the infant was necessary in order that appellants' ownership of this land might be determined. There is no one other than these appellants, for whose benefit these proceedings were had, to pay this guardian *ad litem* fee for services of which they received the benefit. It is ordered that this fee be treated as a part of the costs adjudged against the appellants and the cause is remanded for the ascertaining by proper proceedings as to the amount of this compensation. A lien is declared upon the land in question for the payment of all costs, including the reasonable compensation of the guardian *ad litem.*"

■ The same reasoning is applicable to the present case. It results that the decree of the Chancellor is affirmed and the cause is remanded to the Chancery Court for further proceedings in fixing the costs for the guardian *ad litem* incident to this appeal. The case is in all things affirmed.