# DELBERT GREGORY v. CHARLIE ALEXANDER and JIMMY JOHNS. —367 S. W. (2d) 292.

Middle Section. November 30, 1962.

Certiorari Denied by Supreme Court April 3, 1963.

R. C. Ray, Gallatin, for complainant and cross defendant Delbert Gregory.

James M. Hunter, Gallatin, for defendant and cross-complainant, Charlie Alexander.

Woodall Murrey, Gallatin, for minor defendant Brenda Gail Carmack, Jerry Dale Carmack, Georgia Kaye Carmack.

SHRIVER, J. The original bill was filed by Delbert Gregory against defendants Charlie Alexander and Jimmy Johns praying (1) that an injunction issue enjoining the defendant Charlie Alexander from going upon certain property described in the bill and from renting or attempting to rent the house on the land described therein and restraining Jimmy Johns from moving into the house in question; (2) that complainant be decreed to be the owner of the farm or tract of land in question and that defendants' deed be declared void and for nothing held; (3) for general relief.

The bill asserts that complainant Gregory is the owner of the tract of land in question by reason of a written lease entered into with Rosalie Cox Shrum and her

mother Bertha Cox for a period of four years beginning January 1, 1959, with an option for another four year period and an option to purchase the said land at anytime during the term of the lease which option complainant alleges that he exercised and that a deed to said property signed by Rosalie Cox Shrum and her husband John Shrum was delivered to him.

Defendant and cross-complainant Charlie Alexander alleged that he had purchased the interest of Rosalie Cox Shrum in said land and prayed that complainant's lease and option to purchase, as well as the deed held by him be declared null and void and that same be removed as a cloud upon his title. The answer was joined in by the other defendant Jimmy Johns.

The cross-bill further alleged that certain minor children of Rosalie Cox Shrum should be made parties to this litigation and prayed that these children, to wit, Brenda Gail Carmack, age nine years, Jerry Dale Carmack, age seven years, and Georgia Kaye Carmack, age six years, be made parties.

The cross-bill seeks the appointment of a guardian ad litem for the minor children above named and the construction of the deed from Burton Cox to Bertha Cox et al., recorded in Deed Book 122, page 200 in the Register's Office of Sumner County, Tennessee, to the end that the owner or owners of the property be determined and the interest of the cross-complainant Charlie Alexander be ascertained and decreed; that the lease and option to purchase agreement held by the complainant and recorded in Sumner County, Tennessee, be declared null and void and that the injunction issued upon filing of the original bill be dissolved and the bill dismissed.

The defendants Brenda Gail Carmack, Jerry Dale Carmack, and Georgia Kaye Carmack, answered through their father as next friend and prayed for the appointment of a guardian ad litem.

It is averred in the answer of these defendants that, under the terms of two deeds of record executed by their grandfather, Burton Cox to their grandmother, Mrs. Bertha Cox and their mother Rosalie Cox (Carmack) Shrum, they, as bodily heirs of Rosalie Cox Shrum (nee Carmack), owns a remainder interest in this land subject only to the life estate of their mother.

They also allege that the deed and trust deed to Charlie Alexander, as well as the deed to Delbert Gregory, hereinabove referred to, all constitute clouds upon their title.

The answer of these minors is filed as a cross-bill and affirmative relief is sought.

A number of depositions were taken and a rather extensive record compiled in consideration of which, together with argument of counsel and their briefs, the Chancellor, in a well reasoned opinion held that, as between the complainant Delbert Gregory and the defendant Charlie Alexander, the deed from Rosalie Cox Shrum and her husband to the defendant Charlie Alexander has priority over the deed from the same parties to the complainant Delbert Gregory.

As to the rights and interests of the minor children of Rosalie Cox (Carmack) Shrum, he held that the deed from Rosalie Cox Shrum to defendant Charlie Alexander conveyed only the life estate of the said Rosalie Cox Shrum and that the remainder interest therein will be vested in her bodily heirs to be determined as of the time of her death. The costs were taxed one half to complain-

ant Gregory and one half to defendant Alexander, including a fee for the guardian ad litem of the minors.

—Assignments of Error—

There are two assignments of error as follows:

"Complainant respectfully insists that the Honorable Chancellor, W. M. Leech, erred in holding,

"1. That the defendant, Charlie Alexander, did not, at the time Rosalie Cox Shrum conveyed the property to him, have actual notice of the existing lease and deed that Rosalie Shrum and Bertha Cox had previously made to the complainant on the same property.

"2. That Rosalie Cox Shrum only had a life estate in the property in question."

It is stated by counsel for appellant that there are only two questions to be decided in this law-suit which are:

1. Did complainant prove by a preponderance of the evidence that Charlie Alexander had actual notice of the lease, option contract and deed from Rosalie Cox Shrum and her mother, Bertha Cox, when he obtained a deed from Rosalie Cox Shrum on February 8, 1960.

2. Did Rosalie Cox Shrum take a life estate or a fee simple title under the deed or deeds from Burton Cox and Bertha Cox, exhibits to the answer of the minor defendants.

—Conclusions of Fact and Law—

It is shown that complainant Gregory obtained from Rosalie Cox Shrum and her mother a lease agreement covering the property here involved and in this agreement was an option to purchase which he claims to have exercised before the deed to Alexander was executed.

Rosalie had borrowed money from Rufus Alexander and as a result her note for $1,000.00 came into the hands of Charlie Alexander, a son of Rufus. Charlie got into a gambling game one night with complainant Gregory and lost the $1,000.00 note to him. The note was secured by a deed of trust on the property in question which instrument was signed by Rosa Lee Cox (Carmack). Subsequently, she executed a deed to said property conveying the fee to Charlie Alexander, signing it Rosalie Cox Carmack Shrum, obtaining an additional $500.00 cash from Alexander.

In the meantime she had executed a deed of conveyance to the same property to complainant Gregory, but she testified that she did not know that the instrument she gave Gregory was a deed. She thought it had to do with the rental of the property. She frankly stated that she just didn't know what she was signing and the Chancellor observed in his opinion that this was probably true.

Rosalie's statement about this is significant. She said:

"It was my understanding at the time I signed the lease I would not bind myself for any period longer than one year and I did not have any notice or knowledge that Mr. Gregory was retaining an option of purchase to the property in the lease. I never did receive a copy of the lease. I do not remember signing any deed to the property and if I signed a deed I did not understand that it was a deed to the property to Mr. Gregory, I was signing at that time."

Gregory's deed and his lease agreement with the option to purchase were left in escrow in the hands of Gregory's attorney.

We now quote from the Chancellor's opinion:

"As between Delbert Gregory and Charlie Alexander, there is only one question to be decided, and that is; which deed has priority?

"In deciding this question it is necessary to determine whether or not at the time Rosalie Cox Shrum conveyed the property to Charlie Alexander, the said Charlie Alexander had such actual notice of the existing instruments being held in escrow by the attorney for the complainant as to estop him from questioning said instrument.

"If the defendant, Charlie Alexander, had notice of these instruments, it is conceded that the information relied upon to place him on notice was given to him by the complainant in June of 1959 in front of the Register's office in the Court House in Gallatin."

The Chancellor then quotes from the testimony in the record and concludes as follows:

"From the information which the complainant alleges that he imparted to the defendant, Charlie Alexander, the defendant was not required to inquire of the complainant's attorney if he were holding some papers to be delivered to the complainant upon certain conditions. Mr. Alexander did make such investigation as a reasonably prudent man would have made by a search of the records and by inquiring of Rosalie Cox Shrum if she had sold the property to anyone else. Mr. Hunter drew the deed to Mr. Alexander, and he inquired of Rosalie Cox if she had ever sold the property in the presence of Mr. Alexander, and Mrs. Pat Dalton who was at that time Mr. Hunter's secretary, but who no longer

works for Mr. Hunter and can have no possible interest in the matter, and Mrs. Dalton testified as follows:

"A. She said she had never conveyed it, she might not have said 'conveyed'—but she said she had never sold it to anyone."

■ As is pointed out by the Chancellor, after Gregory told Charlie Alexander that he had a deed to the property which he had been renting from Rosalie Cox Shrum, Alexander went to the Register's Office and found that no such deed was on record. He then went to Rosalie, the owner, and inquired of her and was told by her that she had not given Gregory a deed to the property. The Chancellor held that this was a reasonable and sufficient investigation of the matter by Alexander and that his recorded deed took priority over the unrecorded but prior dated deed to Gregory.

We think the record supports this finding of fact and conclusion of the Chancellor.

But there is another question which arises in this connection which was not raised by counsel nor was it discussed by the Chancellor, to wit, What effect, as to notice, did the fact of Gregory's possession under his lease have?

Of course Alexander knew that Gregory had rented the property for some time and was in possession under a rental agreement but did not know of the deed which Gregory had obtained and under which he later claimed to own the fee.

The general rule as stated in 92 C.J.S. Vendor and Purchaser sec. 346, is:

"POSSESSION OF PROPERTY

"Except as otherwise provided for by statute, possession of real estate by a person other than the vendor is constructive notice to the purchaser, of the right, title, interest, or claim of the possessor, and has the same effect as the notice which is imputed by the recording acts."

In elaborating on the above quoted rule the text (C.J.S.) states further:

"Indeed, such possession is notice of all facts with respect to the title which due and diligent inquiry of the occupant would disclose, and of nothing more."

In sec. 348, page 281, C.J.S. is is said:

"Except in a few jurisdictions, the possession of realty by a person other than the vendor must be inconsistent with the title of the apparent owner by the record in order to impart constructive notice to the purchaser and put him on inquiry. *Where possession is consistent with a recorded title, it is not notice of an unrecorded title.*" (Italics ours)

And in sec. 349, page 286:

"So it has been held that possession by a tenant is not notice to others of any right of the possessor other than to occupy the property as tenant, since possession by one other than the record owner is notice to a purchaser only of such facts as an inquiry of the occupant would naturally disclose, such as the lessor's name and the terms of the lease where the possession is held by a tenant.

\* \* \* \* \* \*

"Possession does not put a prospective purchaser on

inquiry as to negotiations being carried on between the lessor and lessee for the purchase of the property.

\* \* \* \* \* \*

"POSSESSION UNDER RECORDED LEASE. Where a tenant occupies premises, and the record shows a lease under which he is entitled to the possession, his possession will be referred to the recorded lease, and a subsequent purchaser will not be charged with notice of any other undisclosed title or equity which the occupant may have.

\* \* \* \* \* \*

"ASCRIBING POSSESSION TO LEASE. When the person in possession holds a lease of the land and the purchaser knows of the existence of the lease, he may attribute the possession to the lease."

Under all the circumstances shown here, we think, as did the Chancellor, that Alexander made such inquiry as was reasonable and that the rule as to notice from possession did not apply so as to give priority to Gregory's deed.

The first assignment is overruled.

We quote further from the Chancellor's opinion:

"This brings us to the question of the rights and interests of the minor children of Rosalie Cox Carmack Shrum, and other children which may be in the future born to her.

"The Guardian ad Litem in his cross-bill alleges that the deed from Burton Cox to Rosalie Cox created a life estate only in Rosalie Cox with remainder in her bodily heirs, should she die survived by bodily heirs, and should she die without bodily heirs, then the

remainder would vest in the heirs at law of Burton Cox to be determined as of the date of his death.

"The complainant demurred to the cross-bill of the minors, and the defendant, Charlie Alexander, prayed for a construction of the language of the Burton Cox deeds. Thus the issue is one of law to be arrived at from the language of the deed as a whole. Hutchinson [Hutchison] v. Board [194 Tenn. 223], 250 S. W. (2d) 82.

"The question is: Did Rosalie Cox take a fee simple title to the land, or did she take only a life estate?"

The Chancellor concluded that she took only a life estate, hence, her deed necessarily conveyed only that interest and not a fee simple.

The record shows that the minor defendants Brenda Gail Carmack, Jerry Dale Carmack and Georgia Kaye Carmack are the only children of Rosalie Cox (Carmack) Shrum and that, by deed dated October 2, 1942, their grandfather Burton Cox and their grandmother, Mrs. Bertha Cox, conveyed the subject property using the following language:

"This conveyance is made to Mrs. Bertha Cox and Rosalie Cox on the following terms: The said Burton Cox reserves the use of this tract of land during the remainder of his life, and at his death said Mrs. Bertha Cox is to have the use of said land for the remainder of her life and at her death, the said Rosalie Cox is to have this tract of land to her and to her heirs and if she dies without bodily heirs, this tract is to revert to Burton Cox's heirs."

Subsequently, on October 20, 1942, said Burton Cox and Bertha Cox executed what is termed a correction deed in which the following language occurs:

"This conveyance is made on the following terms: Burton Cox reserves a life interest in the tract of land and at his death to Rosalie Cox and her heirs, if any, and if she dies without bodily heirs, it is to revert to the heirs of Burton Cox, but Mrs. Bertha Cox is to have a home on this farm and keep stock and manage the farm as long as she remains the widow of Burton Cox, and at her death or marriage possession is to be vested in Rosalie Cox."

It is the contention of the guardian ad litem that the children, as the only bodily heirs of Rosalie Cox (Carmack) Shrum, own a remainder interest in the land under the above conveyance subject only to the life estate of their mother, and that the deed to Charlie Alexander, hereinabove referred to, as well as the lease and purchase option, together with the deed, to Delbert Gregory all constitute clouds on the title of these defendants insofar as the remainder interest is concerned.

The Chancellor very correctly concluded that in an effort to determine the rights of these parties, the intention of the vendors, Burton Cox and wife Bertha Cox, must be determined and that, for this purpose, we must look to the language of the entire deed and that the result reached is the same whether we consider the first deed or the second deed in-as-much-as the legal import of the language used is substantially the same in both instances.

As above stated, the Chancellor held that, under the terms of the deeds hereinabove quoted from, Rosalie Cox

took only a life estate with remainder at her death to her bodily heirs to be determined as of her death.

It is to be noted that the property involved is the family home place and is worth about $8,000.00. The mother of these children, Rosalie Cox (Carmack) Shrum mortgaged the property twice and sold it twice. The consideration appears entirely inadequate for conveyance of the fee but reasonably adequate for her life interest.

Looking to the intrinsic and extrinsic evidence, did the Chancellor reach the correct conclusion?

■ The preponderance of the evidence points to the conclusion that the grantor intended Rosalie Cox Shrum to take only a life estate. The parties themselves treated the conveyance as having this effect. This is shown by the testimony of Magistrate C. D. Key who drew the instrument in question and who so understood it at the time, and the evidence of Rosalie Cox who considered that she had conveyed only a life estate. Witness the statement of Rosalie Cox made voluntarily and signed in October 1960, when she said:

"My father made a deed to forty (40) acres of land situated in Sumner County, Tennessee in which he conveyed the property for life to my mother, Bertha Cox and at her death the property was to pass to me for and during my life time and at my death the property would pass to my bodily heirs, if any, and if none it would then revert back to the Cox heirs."

Much could be said about the question whether or not the adult parties to this lawsuit came into Court with clean hands, however, there is no question as to the action of the minor children of Rosalie Cox Shrum.

■ It is pointed out by the guardian ad litem, counsel for the minor children, that the Courts now look to the intent of the parties in construing the deed and are not confined to the technical interpretation of words. Had these deeds been construed a number of years ago the position of the minors would have been untenable for the courts of this State generally followed a strict interpretation of the words of the conveyance and we have a number of old cases in this State in which the words, "And his bodily heirs", and similar words created a fee simple estate in the first taker. However, in the more recent cases the Courts have swung away from this kind of interpretation.

For example in Manhattan Savings Bank and Trust Co. v. Bedford, 161 Tenn. 187, 30 S. W. (2d) 227, it was held that in giving effect to a deed of conveyance the intention of the instrument is the guide to be followed, and that intention is to be arrived at from the language of the instrument read in the light of the surrounding circumstances. Citing Dalton v. Eller, 153 Tenn. 418, 284 S. W. 68.

In an earlier case, Scruggs v. Mayberry, 135 Tenn. 586, 188 S. W. 207 it was held:

"Where the devise is to a son and to his children, although they are not yet in being and may never me, it is the preferred construction that the son takes the life estate with remainder to the children.

\* \* \* \* \* \*

"The devise to a son and to his children, and if he dies without children then to his sister and her children, creates a life estate in the son with remainder to the children, and at birth of a child the remainder

would vest, subject to open and let in after-born children."

In the more recent leading case of Hutchison v. Board, 194 Tenn. 223, 250 S. W. (2d) 82, in an opinion by Chief Justice Neil, the following was said:

"The paramount rule of construction to which all others are subservient is that the intention of the grantor is to be decided by consideration of the words he used. And as a corollary, to reach the intention it is proper to consider the entire instrument without regard to technical parts or divisions of the deed." Citing numerous cases including Quarles v. Arthur, 33 Tenn. App. 291, 231 S. W. (2d) 589, 591.

In Hutchison v. Board, the Court quoting from 16 Am. Jur. Sec. 235, went on to say that if clauses or parts of the deed are conflicting or repugnant, the intention is gathered from the whole instrument, instead of from particular clauses and if it is the clear intent of the grantor that apparently inconsistent provisions shall all stand, it will be given that effect if possible, and the technical rules of the common law as to the division of deeds into formal parts will not prevail as against the manifest intent of the parties as shown by the whole deed. The Court further stated:

"Under modern rules of construction of deeds the courts are not required to give a technical meaning to words unless the grantor clearly intended that such words were used in a technical sense."

In Quarles v. Arthur, supra, it was held that where a deed in the granting clause stated "to her, her lifetime then to her heirs of her body", and the habendum clause

stated "to have and to hold the same to her and her heirs and assigns", grantee took a life estate, notwithstanding the qualification in the habendum clause.

In Hutchison v. Board, supra, the deed conveyed the property to grantor's son "and his lawful children after him" and the Court held that under this deed the son was given a life estate and his children a vested remainder.

It is to be further noted that the deeds in the case at bar were not written by an attorney but were written by a Justice of the Peace and it is manifest that he did not understand the meaning of technical legal words and that, therefore, we should attempt to arrive at the vendor's intention by considering the language in its ordinary and everyday usage.

In Hutchison v. Board, supra, the Court points out that the Chancellor expressed the opinion that the deed was written by a person not versed in legal terms and not experienced in drafting legal instruments and this was a surrounding circumstance that the Court should consider and our Supreme Court agreed with this conclusion.

In Butler v. Parker, 200 Tenn. 603, 293 S. W. (2d) 174, the Supreme Court sought to determine the intention of the grantor rather than to hold to the old interpretation placed upon technical words. The deed in that case conveyed the property to "Ralph Parker and at his death to his bodily heirs". The Court acknowledged that this language once upon a time would have created an estate tail which by statute had been converted into a fee simple title but the Court held that the determinative question was whether or not the grantor intended to create a life

estate in Ralph Parker and, in this connection, the Court said:

"The determinative and very interesting question is: What is the estate created by the deed when it is conveyed to 'Ralph Parker and at his death to his bodily heirs'?

    \*   \*   \*   \*   \*   \*

"Under a deed with language of that import at common law it would have vested a conditional fee in the grantee and under the statute De Donis would have vested a fee tail estate in him by reason of the application of the rule in Shelley's case. This rule was abolished by Sec. 64-103, T.C.A. \* \* \*. It seems to us that as a result of the abolishing of the rule in Shelley's case, \* \* \* the conveyance today would vest in the grantee a life estate with a contingent remainder in his heirs.

    \*   \*   \*   \*   \*   \*

"It is impossible for us to make any distinction or legal difference between a conveyance 'To Ralph Parker for life and at his death to his bodily heirs' and a conveyance 'to Ralph Parker and at his death to his bodily heirs' as is in this deed."

The Chancellor in his opinion in the case at bar said:

"If the draftsman of this deed had been familiar with the technical meaning of the words used, and if the grantor had intended to convey the fee to Rosalie Cox, he never would have used the limitation, "and if she dies without bodily heirs", nor would he have used the expression in the habendum clause, and also in the warranties, 'as above stated'. The Court can reach no other conclusion except that the

draftsman was using the word 'heir' in the generally accepted layman term as children and in attempting to limit the interest of Rosalie Cox to a life estate so used the word."

\* \* \* \* \* \*

"The Court is of the opinion that the language in the Burton Cox deed is stronger than in either the Butler vs. Parker, supra, or the Hutchinson [Hutchison] v. Board, supra cases. In the deed before the court grantor provided for a reversion in the event the life tenant should die without issue surviving, while in the two cases above cited it was necessary to read such a provision into the deeds. In the Butler v. Parker case, it was necessary to supply 'for life', and that is all that is necessary in this deed."

We are of opinon that the Chancellor reached the right conclusion and we concur in his findings of fact and of law.

It results that the assignments of error are overruled and the judgment of the Chancellor is affirmed.

Affirmed.

Humphreys and Chattin, JJ., concur.